# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*In re Commitment of Dodge*, 2013 IL App (1st) 113603

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF REGINALD DODGE (The People of the State of Illinois, Petitioner-Appellee, v. Reginald Dodge, Respondent-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-3603 |
| Rule 23 Order filed | March 21, 2013 |
| Rehearing denied | April 17, 2013 |
| Rule 23 Order withdrawn | April 17, 2013 |
| Opinion filed | May 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's finding that respondent was a sexually violent person pursuant to the Sexually Violent Persons Commitment Act and the commitment of respondent to a secure facility for institutional care were upheld, despite the deficiencies in the representation provided by respondent's counsel, including counsel's failure to object when the trial court indicated that it would enter a disposition without input from respondent, since respondent failed to show that he was prejudiced or that the disposition would have been different if the parties had been heard before the disposition was entered. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-80007; the Hon. Michael McHale, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Daniel T. Coyne, Matthew M. Daniels, and Elizabeth D. Leeb, all of Law Offices of Chicago-Kent College of Law, of Chicago, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, Michael M. Glick and John R. Schleppenbach, Assistant Attorneys General, of counsel), for the People. |
| | |
| Panel | PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion. |
| | Justice Epstein concurred in the judgment and opinion. |
| | Justice Pucinski specially concurred, with opinion. |

## OPINION

¶ 1 Following a jury trial, respondent Reginald Dodge was found to be a sexually violent person under the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 *et seq.* (West 2006)). The trial court immediately conducted a "dispositional hearing" and ordered that respondent be committed to institutional care in a secure facility before the parties had been given the opportunity to present an argument or evidence as to the appropriate disposition. On appeal, respondent challenges numerous instances of counsel's allegedly ineffective assistance both at trial and with regard to the dispositional hearing. We affirm the judgment finding respondent to be a sexually violent person. We also affirm the dispositional order committing respondent to institutional care in a secure facility, albeit somewhat reluctantly given the superficial hearing that occurred in this case.

¶ 2                              I. BACKGROUND

¶ 3 In 2007, the State filed a petition to commit respondent to the Department of Human Services (DHS) as a sexually violent person. The State alleged that (1) respondent was serving a 50-year prison term for rape and deviant sexual assault; (2) he suffered from a mental disorder, specifically, paraphilia toward nonconsenting persons; and (3) respondent's mental disorder made it substantially probable that he would engage in future acts of sexual violence.

¶ 4 Before trial, the State filed a motion *in limine* seeking, among other things, an order precluding respondent from placing any information regarding the potential commitment options before the jury. The State argued that such information would be improper and tantamount to commenting on sentencing during a criminal trial. Respondent's attorney objected, stating that "there will be cross[-]examination of the experts regarding their opinion as to what is required for his commitment, whether or not it should be in a secure facility."

The trial court granted the State's motion, finding that such information "is for a dispositional hearing," rather than trial.

¶ 5    At trial, the State presented the expert testimony of Dr. John Arroyo, a licensed psychologist, who testified that the Illinois Department of Corrections (IDOC) maintained a list of sex offenders who were subject to parole or discharge. Those individuals were screened to determine whether they were "okay" to be released or whether they were in the 2% of inmates who required further evaluation. Dr. Arroyo evaluated respondent to determine if he was a candidate for commitment under the Act. After reviewing respondent's master file, Dr. Arroyo interviewed respondent on November 30, 2010, and prepared a report. In forming an opinion, he considered respondent's criminal history.

¶ 6    Respondent committed his most recent sexually violent offense in 1982 (case No. 82 CR 9737) while on parole for a prior sex offense. Respondent, then 27 years old, entered the victim's home through a balcony while armed with a knife and forced the victim to engage in oral, anal and vaginal sex. Respondent believed "she enjoyed it a little." Respondent was convicted of rape, deviant sexual assault, armed robbery and home invasion. In addition, respondent was convicted of attempted residential burglary (case No. 82 CR 9766) as well as residential burglary (case No. 82 CR 9765) in 1982. In the latter case, the victim shouted upon finding respondent standing in his kitchen. Respondent fled, leaving behind a knife, pornographic magazines and a dildo.

¶ 7    In 1974, respondent, then 19 years old, was convicted of rape (case No. 74 CR 6032) when he forced a group of college women into a bedroom at gunpoint and assaulted one woman in front of the others. During his interview, respondent said that he picked the prettiest woman and believed that the women "were out for a good time" because they were wearing shorts and bikinis. Respondent also stated, however, that he was not attempting to justify his behavior and it would not have made a difference if they were dressed as goblins. Respondent believed that no one was hurt. In addition, respondent was convicted of another rape and burglary in 1974 (case No. 74 CR 6033). There, respondent, who had a gun, woke the victim and forced her to have sex while two other people ransacked her home. In a third case in 1974, respondent was convicted of burglary, armed robbery and attempted rape (case No. 75 CR 2176). Respondent entered through a window, took the victim's gun and threatened to rape her but she persuaded him to leave. Furthermore, respondent had an additional theft case in 1974. Respondent also reported that when he was 14 years old, he was stabbed while raping a woman and was surprised at her reaction.

¶ 8    Dr. Arroyo testified that he discounted the possibility that the rapes just happened to occur while respondent was breaking into the homes because respondent conducted the rapes prior to taking items. Dr. Arroyo also considered respondent's nonsexual criminal history, including one offense in which he shot at a federal officer. In addition, respondent had more than 125 disciplinary tickets in prison, including tickets for possessing shanks and blocking locks with razor blades. Respondent also failed to successfully complete a prior probation sentence. Furthermore, the IDOC had offered respondent sex offender treatment but he declined. Respondent stated that the authorities had eliminated his sexual feelings toward women by locking him up for so long and that he "didn't feel much sexually anymore." He was currently in the DHS treatment facility for sex offenders but declined to receive

treatment there as well, preferring to wait for the outcome of his trial before deciding if he would participate in treatment.

¶ 9    Dr. Arroyo testified that he considered the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) in support of his conclusion that respondent had "paraphilia not otherwise specified, nonconsent and antisocial personality disorder." Dr. Arroyo explained that paraphilia is a sexual fixation involving recurrent, intense sexually arousing fantasy, sexual urges or behaviors involving nonconsenting persons for a period of at least six months. The second criterion of paraphilia was that the urges or fantasies cause clinically significant distress or impairment in social functioning. In respondent's case, he had been engaging in the aforementioned sexual urges and fantasies for years and continued to engage in sexually violent conduct despite having been sanctioned for it. In addition, Dr. Arroyo explained that antisocial personality disorder involved, among other things, a persistent pattern of violating others' rights since age 15 and for a period of years. Dr. Arroyo observed that respondent had failed to conform to social norms regarding lawful behavior, recklessly disregarded the safety of others and lacked remorse, as indicated by rationalizing or indifference to his mistreatment of others. Specifically, respondent had stated that one victim somewhat enjoyed the rape and respondent did not believe he had harmed anyone with respect to the incident with the college students. Dr. Arroyo also stated that although antisocial personality disorder was not sexual in nature, one illness exacerbated the other. Furthermore, Dr. Arroyo lacked sufficient information to form an opinion as to potential substance abuse. Dr. Arroyo opined that respondent's mental disorders affected his emotional or volitional capacity and predisposed him to engage in future acts of sexual violence.

¶ 10    Dr. Arroyo examined actuarial studies in determining respondent's likelihood of committing another sex offense. According to Static-99R, respondent was high risk because he had chosen to engage in offending behavior despite having been sanctioned for it, and declined offers to be treated. Respondent was also in the high risk category according to the Minnesota Sex Offender Screen Tool Revised (MnSOST-R). In addition, respondent scored in the 83rd percentile as compared to other inmates in the Hare Psychopathy Check List Revised (PCLR), which examines antisocial behavior based on a respondent's current state of mind. Dr. Arroyo also considered that respondent had committed offenses both as a juvenile and as an adult, had violated conditional release and had committed a new offense while under community supervision. Furthermore, although age is a protective factor that tends to decease risk, respondent was 56 years old, relatively young and able-bodied, and still able to reoffend. Similarly, although treatment was a protective factor, respondent had declined treatment. Dr. Arroyo opined that respondent was substantially probable to engage in future acts of sexual violence due to his mental disorders. Dr. Arroyo testified that by substantially probable, he meant "[m]uch more likely than not."

¶ 11    On cross-examination, Dr. Arroyo testified that respondent was not of significant age, which would be 15 years or less of remaining life expectancy. Dr. Arroyo also testified, however, that he did not know respondent's life expectancy and that sex offenders over the age of 60 were found to reoffend at the lowest rate. Dr. Arroyo further testified that while in prison, respondent did not receive tickets for sexual incidents, alcohol use or drug use.

¶ 12    Dr. Edward Smith, a clinical psychologist, testified that he conducted sexually violent

persons evaluations through a contract with DHS. Dr. Smith reviewed respondent's master file, interviewed him, administered psychological testing and wrote reports. In forming his opinion, Dr. Smith considered respondent's criminal history. Dr. Smith's recitation of respondent's criminal offenses substantially corroborated Dr. Arroyo's testimony but Dr. Smith added that in case number 74 CR 6033, respondent reported being under the influence of drugs and alcohol during the offense. Dr. Smith also added that in case number 75 CR 2176, respondent told the victim that someone had paid him to rape her. When the victim said she would pay respondent the same amount not to rape her, he said he would return the next day to let her know who was paying him to rape her. In addition, as to case number 82 CR 9737, respondent believed his 50-year sentence was unfair because the offense was not heinous.

¶ 13    Dr. Smith testified that respondent talked about his sexual offenses in a very matter-of-fact manner with little emotional expression. He also used statements that minimized the significance of his crimes, stating that he had "only" vaginally raped his victim. In addition, he discussed the acts as if they were consensual. During most encounters, he was armed and broke into an individual's residence. Dr. Smith also considered respondent's nonsexual crimes, which included shooting at a federal officer, and his behavior in prison. Dr. Smith substantially corroborated Dr. Arroyo's testimony regarding respondent's infractions in prison and added that he was sentenced to segregation time for telling a female staff member that he loved her. Respondent declined officers of treatment while in prison because he believed he did not need it. He also declined treatment at DHS.

¶ 14    Respondent's answers to the Minnesota Multiphasic Sex Inventory (MMPI-2) revealed that he minimized the significance of past events by using different justifications or excuses for the offenses he committed, reflecting that he felt little remorse but knew his conduct was wrong. Respondent stated that he was not as interested in sex as most men but did have basic sexual urges. In diagnosing respondent, Dr. Smith consulted the DSM-IV-TR. He diagnosed respondent with paraphilia involving attraction to nonconsenting females, antisocial personality disorder, alcohol abuse and cannabis abuse. As to the paraphilia diagnosis, Dr. Smith observed that respondent committed multiple rapes over a period of years, typically with the use of a weapon. In support of his finding that respondent had antisocial personality disorder, Dr. Smith noted that respondent had engaged in criminal activity from an early age and had acknowledged engaging in animal torture as an adolescent. In addition, paraphilia and antisocial personality disorder affected respondent's emotional or volitional capacity and predisposed him to engage in acts of sexual violence. Respondent's substance abuse also led to poor decision making.

¶ 15    To determine respondent's likelihood of committing sexual offenses in the future, Dr. Smith considered the Static-99 and Static-99R. The two tests considered essentially the same factors but the latter test also considered age. Even with a one-point reduction based on his age, respondent was in the high risk category according to Static-99R. In addition, respondent fell within the high risk category of the MnSOST-R. Furthermore, an individual's attitude toward sex crimes was a dynamic factor that could be changed with treatment and treatment was also a protective factor that could lower risk, but respondent had refused treatment. Although some research suggested that the likelihood of reoffending begins to

diminish at age 60, other studies showed that the occurrence of sexual offenses did not necessarily decline with age. Dr. Smith opined that respondent had engaged in sexually violent offenses, suffered from paraphilia and antisocial personality disorder, and was dangerous because his mental disorder made it substantially probable that he would engage in future acts of sexual violence. By substantially probable, Dr. Smith meant, "[m]ore likely than not."

¶ 16　　On cross-examination, Dr. Smith testified that the diagnosis of paraphilia was based on respondent's history before 1982 and acknowledged that respondent had not engaged in sexual misconduct in prison. Dr. Smith testified that although the recurrence of sexual offenses diminished after age 60, it would be inaccurate to say that no one committed an offense after that age. Dr. Smith further testified, however, that in the very small sample forming the basis of comparison in Static-99R, no sex offenders over 60 years old were brought to the authorities' attention.

¶ 17　　Following Dr. Smith's testimony, the State published before the jury certified copies of several of respondents' convictions (case Nos. 82 CR 9737, 74 CR 6032, 74 CR 6033 and 75 CR 2176) and then rested. Respondent rested without testifying or presenting evidence. The jury then found respondent to be a sexually violent person. The court immediately entered an order committing respondent to institutional care in a secure facility, rather than conditional release, before the parties were given a meaningful opportunity to present any arguments or evidence. Respondent now appeals.

¶ 18　　　　　　　　II. COUNSEL'S PERFORMANCE AT TRIAL

¶ 19　　On appeal, respondent first asserts that counsel was ineffective at the trial which led to the jury's finding that respondent is a sexually violent person. The Act permits the State to extend a criminal defendant's incarceration beyond the time that he would otherwise be subject to release if that defendant is found to be "sexually violent." *In re Detention of Samuelson*, 189 Ill. 2d 548, 552 (2000). At trial, the State must prove beyond a reasonable doubt that the respondent is a "sexually violent person" because (1) the respondent has been convicted of a sexually violent offense; (2) the respondent suffers from a mental disorder; and (3) he is dangerous because his mental disorder makes it substantially probable that he will commit future acts of sexual violence. 725 ILCS 207/5(f), 15, 35(d)(2) (West 2006). In addition, a "mental disorder" is "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2006).

¶ 20　　Proceedings governing a petition alleging that a defendant is a sexually violent person are civil in nature. *Samuelson*, 189 Ill. 2d at 552; 725 ILCS 207/20 (West 2006). Nonetheless, the Act provides a respondent with the right to the *effective* assistance of counsel as provided in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). *People v. Rainey*, 325 Ill. App. 3d 573, 585-86 (2001); 725 ILCS 207/25(c)(1) (West 2006). A successful ineffective assistance of counsel claim requires the claimant to prove that counsel's conduct fell below an objective standard of reasonableness and a reasonable probability exists that but for counsel's unprofessional conduct, the outcome would have

been different. *In re Detention of Tittlebach*, 324 Ill. App. 3d 6, 10 (2001). In addition, both prongs of the test must be satisfied in order for a respondent to prevail. *In re Commitment of Bushong*, 351 Ill. App. 3d 807, 817 (2004); *In re Detention of Erbe*, 344 Ill. App. 3d 350, 362 (2003). Furthermore, a respondent must overcome the strong presumption that the challenged action or inaction resulted from sound trial strategy, rather than incompetence, and every effort should be made to eliminate the distorting effects of hindsight. *Erbe*, 344 Ill. App. 3d at 362. Trial counsel "is not required to manufacture a defense where no valid defense exists." *People v. Elam*, 294 Ill. App. 3d 313, 323 (1998).

¶ 21    As a threshold matter, respondent acknowledges the two-prong test set forth in *Strickland*, but argues that no showing of prejudice is required where counsel entirely fails to subject the prosecution's case at trial to meaningful adversarial testing. *People v. Kozlowski*, 266 Ill. App. 3d 595, 600 (1994) (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)). Nonetheless, the record rebuts respondent's contention that counsel failed to subject the State's case to meaningful adversarial testing at trial.

¶ 22    Before trial, counsel argued that the State had not shown probable cause, presented several challenges to the State's pretrial motion *in limine*, and moved to strike a potential juror for cause. At trial, counsel's trial strategy was to undermine the second and third elements of the sexually violent person definition by challenging the State's reliance on respondent's past, rather than present, conduct and mental state and by portraying respondent as a *former* sex offender who was no longer a threat in light of his age and his lengthy prison sentence. See *Samuelson*, 189 Ill. 2d at 552, 559 ("A defendant cannot be involuntarily committed based on past conduct.") Trial counsel also objected to the admission of certified copies of conviction, moved for a directed finding and filed a motion for a new trial.

¶ 23    As stated, the record does not support respondent's assertion that trial counsel did nothing to attack the second and third elements necessary to find that respondent is a sexually violent person. An attorney takes his client as he finds him. See *People v. Flores*, 245 Ill. App. 3d 149, 157 (1993) (defense counsel is not required to manufacture a defense where none exists). Given the evidence presented, it appears that trial counsel had limited means of challenging the State's evidence that respondent was mentally ill and that, as a result, it was substantially probable that he would commit future acts of sexual violence. Nonetheless, counsel's theory, as shown by his arguments and examination of the State's witnesses, was that even if the State could prove that respondent was formally mentally ill and a risk, the jury should not believe that respondent was presently mentally ill.

¶ 24    Similarly, counsel's attempt to limit the application of the experts' testimony to past events also suggested to the jury that the State could not prove that respondent was presently dangerous and much more likely than not to commit a future act of sexual violence. Moreover, counsel attempted to show it was unlikely that respondent would do so because he was 56 years old, almost 60 years old, and that the recidivism rate was low for sex offenders after the age of 60. As respondent acknowledges, this was a viable defense. Counsel also attacked the third element by suggesting respondent's lengthy incarceration had significantly deceased his sex drive. Although respondent contends that counsel did not argue in closing that the State had failed to meet its burden of proof, that proposition was clearly the import of counsel's argument, even if counsel did not expressly state as such. In light of

trial counsel's foregoing strategies, albeit ultimately unsuccessful ones, we categorically reject respondent's assertion that the State's case was not subjected to meaningful adversarial testing at trial. Accordingly, respondent must establish both prongs of *Strickland* in order to obtain relief.

¶ 25     Respondent contends that trial counsel was ineffective for failing to move to strike two prospective jurors for cause after they indicated that they were not proficient with English. When read in its entirety, however, the record shows that both jurors were able to understand English (see 705 ILCS 305/2(3) (West 2006)). The trial court gave the jury several instructions during the *voir dire* and upon inquiry, none raised their hands to indicate a lack of understanding or acceptance of the instructions. When the court individually asked prospective juror Marusarz numerous questions, he provided answers that were both responsive and appropriate. When asked whether anything would interfere with his ability to be fair, the following colloquy ensued:

> "MR. MARUSARZ: I think my English may not be good enough for, you know, this kind of–
>
> THE COURT: Well, I just went through 20 questions with you and we have bantered back and forth pretty quickly.
>
> MR. MARUSARZ: Because I understand about some. When you talk before, when you speak, sometimes it's hard to understand everything."

¶ 26     The court also individually asked prospective juror Mazor numerous questions and received appropriate responses. When asked whether anything would interfere with his ability to be fair, he stated as follows:

> "MR. MAZOR: Only thing, my proficiency with English.
>
> THE COURT: Oh, no, I have to disagree with you there. You were doing just fine.
>
> MR. MAZOR: I'm talking about lawyer jargon.
>
> THE COURT: Lawyer jargon, well, we'll keep it all right."

¶ 27     The *voir dire* of Marusarz and Mazor, when read as a whole, showed that despite their own concerns, they were both able to sufficiently understand English. See *In re Commitment of Trulock*, 2012 IL App (3d) 110550, ¶ 44 (in determining whether a juror is competent, the trial court should consider the entire *voir dire* examination of that juror). In addition, the entire jury would be apprised of "lawyer jargon" through the jury instructions received at the end of trial. Accordingly, respondent's attorney had no reason to move to strike Marusarz and Mazor for cause and his performance was neither deficient nor prejudicial.

¶ 28     Next, we reject respondent's assertion that trial counsel was ineffective for remarking in his opening statement that respondent would testify at trial. Specifically, respondent contends that his ultimate decision not to testify was foreseeable because respondent repeatedly declined to be transported to pretrial hearings. At one pretrial hearing, trial counsel stated that respondent said he did not like the trip to court. The court then acknowledged that it was a long trip. At best, respondent's absence at pretrial hearings showed that he disliked long bus rides and did not feel the need to attend short hearings during which very little occurred, not that he would decline to attend a trial at which he may be committed.

¶ 29    As trial drew near, counsel told the court that respondent would be at the trial and, as represented, respondent did attend. During his opening statement, counsel stated that respondent would testify and the jury would "get a feel for him," essentially urging the jury to see him as a now harmless older man, "a 56-year-old American Indian." After the State rested its case, however, respondent's answers to the trial court's questions showed that respondent himself, rather than his attorney, decided that respondent would not testify. Respondent has failed to demonstrate how respondent's failure to attend pretrial hearings has any bearing on the likelihood that respondent would attend his trial but not testify. *Cf. People v. Briones*, 352 Ill. App. 3d 913 (5th Dist. 2004) (counsel's performance may be unreasonable if the failure to present promised testimony is foreseeable). Although counsel stated at one pretrial hearing that it was possible that respondent would not testify, counsel also stated that respondent intended to testify. Furthermore, every case presents the possibility that the defendant or respondent will change his mind about testifying. Absent evidence that respondent told his attorney prior to trial that respondent would not testify, or evidence that counsel advised respondent not to testify, it was entirely reasonable for counsel to implement respondent's prospective testimony into his opening statement. See *People v. Manning*, 334 Ill. App. 3d 882, 893 (2002) (the First District presumed counsel's failure to present the defendant's promised testimony was not deficient where the defendant did not allege that counsel's opening statement was made without consulting the defendant or that counsel advised him not to testify, and where the record did not show why the defendant did not testify); but see *Briones*, 352 Ill. App. 3d at 919 (the Fifth District found counsel was deficient for failing to present the defendant's promised testimony where counsel failed to make a record showing that the defendant changed his mind about testifying or that counsel broke her promise as a matter of sound trial strategy).

¶ 30    Respondent also contends that trial counsel was ineffective in cross-examining Dr. Arroyo because counsel failed to establish that respondent was unlikely to reoffend in light of his age. On direct examination, Dr. Arroyo testified that although age can be a protective factor that decreases risk, respondent, 56 years old, was relatively young. On cross-examination, counsel attacked that testimony. After Dr. Arroyo testified that a significant age required 15 years or less of life expectancy, trial counsel elicited testimony that Dr. Arroyo did not know respondent's life expectancy. Counsel also elicited testimony from Dr. Arroyo that sex offenders over the age of 60 were found to reoffend at the lowest rate. Although respondent seems to suggest that counsel would be ineffective for eliciting anything less than an unequivocal concession that respondent's age made it impossible for him to reoffend, we find counsel's cross-examination of Dr. Arroyo was reasonable in light of the facts with which counsel was presented. See *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 34 (counsel's decision as to when and how to cross-examine a witness is generally a matter of trial strategy that will not support an ineffective assistance of counsel claim).

¶ 31    We also find the record does not support respondent's assertion that trial counsel intended to impeach Dr. Arroyo with prior deposition testimony but failed to order the deposition transcripts as required to perfect his impeachment. During cross-examination, trial counsel attempted to ask Dr. Arroyo about his deposition testimony and the following colloquy ensued:

"MR. TELISMAN [Assistant Attorney General]: I'm objecting because it appears that counsel is going to attempt to impeach the witness, and I don't believe he can perfect it. *** The transcript was never typed up. ***

MR. DOSCH [respondent's attorney]: I'm not trying to impeach him, I'm trying to elaborate on the last thing he testified to is [*sic*] about the 15-year-life expectancy, which he also discussed during the deposition.

MR. TELISMAN: The moment I hear a question beginning 'Didn't you say in your deposition,' that sounds like impeachment to me.

MR. DOSCH: I'm just drawing his attention to that.

THE COURT: I'm concerned as well. *** Do you expect to go to things he said at the deposition versus what he's saying here today at trial? I would have to agree with the State, if that's the direction you're going, there's no way you're going to be able to perfect it.

MR. DOSCH: I'm not trying to perfect anything, Judge. I'm trying to get some information out regarding–

THE COURT: You can ask him as he sits here today.

MR. DOSCH: I can.

THE COURT: What his belief is or what he said during his direct, but I can't see you going anywhere into what he said at a deposition unless you have the transcript. Okay?

MR. DOSCH: I'm not intending to do that."

¶ 32    Thus, the record shows neither that trial counsel attempted to impeach Dr. Arroyo nor that there was any impeachment to perfect. Accordingly, respondent cannot demonstrate that counsel was deficient or that respondent was prejudiced as a result.

¶ 33    Next, respondent asserts that trial counsel was ineffective for failing to object to the State's opening statement and Dr. Arroyo's irrelevant testimony regarding the sex offender evaluation process. Specifically, respondent asserts that counsel failed to object to the State's opening remark that the IDOC screens "every single person who has [committed] a sexually violent offense," but that only "[a]bout 2 percent of that population gets out, and [goes] onto the next level, which is an evaluation level *** to see if they're a sexually violent person." In addition, respondent argues that trial counsel failed to object when the State elicited the same information from Dr. Arroyo. This information was relevant, however, to explain how Dr. Arroyo came to evaluate respondent. Even assuming counsel should have objected to this testimony as irrelevant, respondent cannot demonstrate prejudice resulting from this minor deficiency.

¶ 34    Respondent does not dispute that he has been convicted of a sexually violent offense. In addition, both experts testified that he suffers from mental disorders, specifically, paraphilia as to nonconsenting females and antisocial personality disorder. Dr. Smith also opined that respondent engaged in substance abuse. Moreover, Dr. Arroyo opined that it was substantially probable that respondent would engage in future acts of sexual violence and that by "substantially probable," he meant "[m]uch more likely than not." Similarly, Dr. Smith opined that it was substantially probable that respondent would engage in future acts of

sexual violence and that by "substantially probable," he meant "[m]ore likely than not," somewhat corroborating Dr. Arroyo's opinion. In light of such testimony, respondent cannot demonstrate that the outcome would have been different had information regarding the evaluation process not been placed before the jury.

¶ 35    Respondent further asserts that trial counsel misunderstood the law. Specifically, respondent alleges that counsel did not understand that "substantially probable" under the Act means "*much* more likely than not." (Emphasis added.) *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶¶ 30-37; *In re Detention of Hayes*, 321 Ill. App. 3d 178, 188 (2001). Respondent assumes that counsel misunderstood the law because he did not address the deficiency in Dr. Smith's opinion that respondent's mental disorder merely made it "[m]ore likely than not" that he would engage in future sexually violent acts. *People v. Steward*, 295 Ill. App. 3d 735, 742 (1998) (counsel may be deemed ineffective where he has misunderstood the applicable law). Notwithstanding respondent's speculation, counsel may have decided to pursue a different strategy in light of Dr. Arroyo's testimony that respondent was "*[m]uch* more likely than not" (emphasis added) to reoffend. See *Erbe*, 344 Ill. App. 3d at 373 (it is the trier of fact's responsibility to evaluate the witnesses' credibility, resolve evidentiary conflicts and decide what reasonable inferences are to be drawn). In addition, had trial counsel cross-examined Dr. Smith regarding this testimony, it may have given him the opportunity to correct his testimony and placed undue emphasis on unfavorable evidence. We find that counsel's conduct was neither deficient nor prejudicial in this regard.

¶ 36                            III. DISPOSITIONAL HEARING

¶ 37    Finally, respondent asserts that trial counsel failed to follow through on respondent's right to a dispositional hearing. The Act requires that the trial court conduct a hearing prior to entering a commitment order. *People v. Winterhalter*, 313 Ill. App. 3d 972, 981 (2000). Section 40(b)(1) states that "[t]he court shall enter an initial commitment order under this Section *pursuant to a hearing* held *as soon as practicable* after the judgment is entered that the person who is the subject of a petition under Section 15 is a sexually violent person. (Emphases added)." 725 ILCS 207/40(b)(1) (West 2006). Section 40(b)(1) also states that the trial court "*may* adjourn the hearing to obtain additional information if the court lacks sufficient information" (emphasis added; internal quotation marks omitted) to determine whether the respondent should be placed in institutional care in a secure facility or be placed on conditional release. *Tittlebach*, 324 Ill. App. 3d at 12 (quoting 725 ILCS 207/40(b)(2) (West 1998)). It follows that the court may also determine that it has sufficient information to make that determination without adjourning proceedings. Indeed, this court has specifically held that the Act grants the trial court discretion to immediately hold a dispositional hearing where the court believes neither a supplemental examination nor a predisposition investigation is necessary to frame the commitment order. *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 73 (citing 725 ILCS 207/40(b)(1) (West 2010)).

¶ 38    That said, the Act does *not* state that the court may enter a commitment order without a hearing. In addition, the Act enumerates the following factors for the court to consider in determining whether a respondent should be committed to institutional care in a secure

-11-

facility or whether he should be committed to conditional release: (1) the nature and circumstances of the behavior alleged in the petition (725 ILCS 207/15(b)(1) (West 2006)); (2) the respondent's mental history; (3) the respondent's present mental condition; and (4) "what arrangements are available to ensure that the person has access to and will participate in necessary treatment" (725 ILCS 207/40(b)(2) (West 2010)). At the time the petition was filed, section 40(b) also listed as factors the respondent's prospective living arrangements and ability to support himself upon release. 725 ILCS 207/40(b) (West 2006).

¶ 39     After the trial court entered judgment on the jury's verdict, the State made the following remarks:

> "Your Honor, pursuant to Section 40 of the Act, the Section 40B1 states the Court shall enter a commitment order as pursuant to [a] hearing held as soon as practicable after the judgment is entered. Otherwise the Court can either set the matter for a dispositional hearing or simply commit the Respondent to secure institutional care for care, custody, and treatment.

> If the Court deems it necessary, of course, the Court can order a predispositional evaluation which will be done by the DHS evaluator."

The court then asked respondent's attorney for his position on what should happen next but did not permit him to answer. Instead, the following colloquy ensued:

> "THE COURT: I'm going to consider this a dispositional hearing. I don't feel I need any further evidence to make a decision on the appropriate next steps for Mr. Dodge, so–

> MR. DOSCH [respondent's attorney]: Well, irregardless, Judge, I will need a date to file a motion for new trial.

> THE COURT: Of course. Of course, I agree.

> Nevertheless, based on the testimony that I have heard from two expert witnesses during this trial, I find Mr. Dodge is not an appropriate candidate for conditional release. I don't need to hear any additional information. I don't need a predispositional investigation conducted in any way, shape or form.

> He's not in treatment. He is suffering from a mental disorder. Those are my findings. He will be remanded to the TDF until further notice."

¶ 40     We agree with respondent that this proceeding does not comport with a meaningful dispositional hearing. The court asked trial counsel for his position on whether a continuance was needed before the disposition was entered but, having decided to proceed to the disposition without permitting counsel to answer, the court did not ask trial counsel for his position on the appropriate disposition. Instead, the court committed respondent to a secure facility without the presentation of *any* argument or additional evidence while respondent's attorney stood mutely by. In this "hearing," then, the respondent was not heard at all.

¶ 41     We cannot help but find that trial counsel's conduct in failing to object to the court's entry of a disposition without input from respondent fell below an objective standard of reasonableness. *Cf. People v. Whalum*, 2012 IL App (1st) 110959, ¶ 22 (the waiver rule may be relaxed where an objection would fall on deaf ears). We acknowledge that although counsel indicated at the hearing on the motion *in limine* that he wanted to cross-examine the

State's expert witnesses regarding the appropriate disposition, the record does not demonstrate that trial counsel had any favorable evidence to present at the hearing on the motion *in limine*. Nonetheless, trial counsel could have argued, as he essentially did at trial, that respondent did not presently suffer from a significant mental disorder. Counsel could have argued that commitment to a secure facility was therefore unnecessary. Counsel may also have been able to argue that if respondent was ordered to participate in treatment while on conditional release, he would do so. In addition, counsel could have argued that the State had not presented specific evidence that conditional release was not appropriate for respondent. At a minimum, counsel could have stated respondent's position regarding the appropriate disposition.

¶ 42        To be clear, counsel is not always required to present evidence or a thorough argument. *Elam*, 294 Ill. App. 3d at 323 (counsel "is not required to manufacture a defense where no valid defense exists"); see also *In re Dante W.*, 383 Ill. App. 3d 401, 411-13 (2008) (counsel is not *per se* ineffective for conceding his client's guilt to offenses for which there is overwhelming evidence). In addition, the trial court need not expressly apply the facts before it to the factors enumerated in the Act. Nonetheless, the Act contemplates more than what ensued here. Counsel was deficient for failing to ensure that respondent was heard before the disposition was entered.

¶ 43        Notwithstanding these troubling proceedings, this court lacks any legal basis to grant respondent a new dispositional hearing. Respondent has not characterized the deficiency that occurred here as trial court error. As a result, any error committed by the trial court does not present a basis to provide respondent with a new dispositional hearing, but rather, our power to grant respondent his desired relief is limited to the context of his ineffective assistance of counsel claim.

¶ 44        As with the purported deficiencies at trial, respondent asks this court to find that this case presents exceptional circumstances that warrant presuming prejudice, rather than requiring respondent to demonstrate actual prejudice. See *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (circumstances justifying a presumption of ineffectiveness are infrequent); *Kozlowski*, 266 Ill. App. 3d at 599 (prejudice is presumed under only exceptional circumstances). A respondent must overcome a high burden for a court to forsake the *Strickland* test (see *Dante W.*, 383 Ill. App. 3d at 415) and here, respondent has cited no cases applying this exception to commitment proceedings under the Act. In addition, this is not a case where trial counsel failed throughout the proceedings in the trial court to test the State's case. *Cf. People v. Shelton*, 281 Ill. App. 3d 1027, 1030-31, 1037 (1996) (where the assistant public defender (the APD) was appointed to represent the defendant regarding his *pro se* petition for discharge, expressed surprise that the respondent could file the petition, and presented no argument whatsoever, the APD failed to act as a true advocate); *Kozlowski*, 266 Ill. App. 3d at 599-601 (counsel completely failed to subject the State's case to adversarial testing where counsel relied on a legally unavailable defense). On the contrary, counsel did submit the State's case to adversarial testing at trial, notwithstanding that his strategies did not prevail. See *People v. Woods*, 2011 IL App (1st) 092908, ¶ 29 (the court declined to apply *Cronic* to the defendant's ineffective assistance of counsel claim where counsel conceded the defendant's guilt but nonetheless acted as his advocate throughout proceedings). Moreover,

the serious consequences of a dispositional hearing do not themselves justify presuming prejudice, as courts have declined to apply this rule even where a disposition has grave consequences. See *Florida*, 543 U.S. at 190-92 (the Supreme Court applied *Strickland* rather than *Cronic* where trial counsel conceded the defendant's guilt in a capital case); *People v. Harris*, 182 Ill. 2d 114, 151-55 (1998) (where the defendant asserted that trial counsel, who had contested the defendant's guilt at trial, was ineffective for stipulating to the defendant's eligibility for the death penalty, the supreme court applied *Strickland* rather than *Cronic* and found no prejudice); see also *People v. Adkins*, 239 Ill. 2d 1, 35-47 (2010) (where the defendant challenged trial counsel's concession that the defendant committed residential burglary in a capital case, the supreme court found that counsel was not presumptively ineffective under *Cronic*). We further note that treating counsel's failure to present a case for conditional discharge on respondent's behalf as automatic reversible error may encourage attorneys in future cases to abstain from doing so in order to create a basis for reversal on appeal. Accordingly, respondent must demonstrate prejudice pursuant to *Strickland* in order to obtain relief.

¶ 45       Based on the record before us, however, respondent cannot demonstrate prejudice. Respondent would likely have received a more meaningful dispositional hearing but for counsel's performance. Nonetheless, it is extremely unlikely under these circumstances that the outcome of that hearing would be different, as necessary to show prejudice within the meaning of *Strickland*. *Tittlebach*, 324 Ill. App. 3d at 10; see also *People v. Richardson*, 401 Ill. App. 3d 45, 47 (2010) (it is not enough to show that the error had some *conceivable* effect on the outcome of the proceeding, but rather, the defendant must demonstrate a reasonable probability that the fact finder would have had reasonable doubt of his guilt). The evidence presented at trial and properly before the trial court at the dispositional hearing was overwhelming. See *Bushong*, 351 Ill. App. 3d at 817 (respondent could not demonstrate that counsel was ineffective where "the State's evidence was so overwhelming that respondent was not prejudiced"). Central to the trial court's finding that respondent was not suitable for conditional release was respondent's mental disorder and lack of treatment. See 725 ILCS 207/40(b)(1) (West 2006). The evidence presented at trial strongly suggests that respondent is unlikely to attend treatment because he does not appreciate the seriousness of his condition. Moreover, because he has declined to receive treatment to date, he has not yet begun the process of recovery. Thus, the court may have found that respondent's release in his present condition would pose too great of a threat to others. The trial court, having before it the facts adduced at trial, had ample evidence from which to determine that conditional discharge would not be appropriate.

¶ 46       Moreover, respondent has not identified any available argument or evidence that could have changed the disposition had counsel insisted that the parties be heard before the disposition was entered. Even if this court were to speculate that such evidence existed, it is not properly before us in considering whether respondent can demonstrate prejudice from counsel's inaction. It is well settled that a reviewing court cannot find counsel was ineffective based on the alleged possibility that evidence exists but does not appear in the record due to counsel's inaction. See *Richardson*, 401 Ill. App. 3d at 46-48 (respondent could not show counsel was ineffective for failing to offer expert testimony where any such

evidence would be outside the record on appeal); *People v. Phillips*, 383 Ill. App. 3d 521, 544-45 (2008) (the reviewing court declined to review the defendant's claim that counsel was ineffective for failing to introduce a report as substantive evidence where this claim relied on matters not contained in the record); *People v. Villanueva*, 382 Ill. App. 3d 301, 308-09 (2008) (in reviewing the defendant's ineffective assistance of counsel claim, the reviewing court could not infer that a favorable witness existed where doing so would ask the court to venture outside the record); *People v. Millsap*, 374 Ill. App. 3d 857, 863 (2007) (where the defendant asserted that counsel failed to file a motion to suppress statements to the police, the reviewing court declined to consider the claim where it was not clear that the record contained all of the evidence that could have been presented and thus, the claim involved matters outside the record). As a result, respondent's only means for obtaining relief must be found in the Act or the Code of Civil Procedure.

¶ 47    As stated, we are troubled by the proceedings in this case. Commitment clearly places respondent's liberty interest at stake. See *In re Commitment of Weekly*, 2011 IL App (1st) 102276, ¶ 47. Nonetheless, in reviewing respondent's ineffective assistance of counsel claim, we are constrained by the limitations of *Strickland*. *Bushong*, 351 Ill. App. 3d at 816-20 (where trial counsel did not preserve a meritorious due process claim, the reviewing court considered the claim in the context of the respondent's ineffective assistance of counsel assertion but nonetheless found that respondent was not prejudiced where the evidence was overwhelming). Accordingly, while we find counsel was deficient for failing to protect respondent's right to a genuine hearing, respondent cannot demonstrate the requisite prejudice under these circumstances. With that said, in the future, we admonish the trial court and trial counsel to consider the serious consequences of the Act and treat the dispositional hearing provided by the Act as more than a mere formality. See also *Fields*, 2012 IL App (1st) 112191, ¶¶ 73-79 (the trial court erred by not holding a dispositional hearing to afford the respondent an opportunity to present evidence where the trial court denied his request to do so).

¶ 48    For the foregoing reasons, we affirm the trial court's judgment.

¶ 49    Affirmed.

¶ 50    JUSTICE PUCINSKI, specially concurring.

¶ 51    I respectfully add my special concurrence. In this matter we are asked if the judge took a short cut on the dispositional hearing. I believe he did and that a full hearing and findings are required under the statute because a liberty interest is at stake. However, since I agree that the appellants have failed to satisfy the second prong of *Strickland*, I do not see how, without having judge error before us, this matter could be decided by us in any other way.