2020 IL App (2d) 190070-U
No. 2-19-0070
Order filed March 26, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| IN RE COMMITMENT OF JACKIE HUGHES, | ) ) ) ) ) | Appeal from the Circuit Court of Lake County.<br><br>No. 06-MR-1326 |
| (The People of the State of Illinois, Petitioner-Appellee v. Jackie Hughes, Respondent-Appellant). | ) ) ) ) | Honorable<br>Theodore S. Potkonjak,<br>Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Birkett and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in finding no probable cause shown to warrant an evidentiary hearing on whether respondent was no longer a sexually violent person. Respondent failed to establish that he received ineffective assistance of counsel for counsel's failure to object to the State's reference to the standard for conditional release.

¶ 2    Respondent, Jackie Hughes, appeals an order of the circuit court of Lake County finding no probable cause for an evidentiary hearing on whether he was no longer a sexually violent person. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In 2014, respondent was adjudicated a sexually violent person (SVP) under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 et *seq.* (West 2014)) and committed to the custody of the Department of Human Services (DHS) for control, care, and treatment in a secure facility until further order of the court. This court affirmed respondent's judgment of commitment. *In re Commitment of Hughes*, 2017 IL App (2d) 160459-U. In 2017, following a periodic review pursuant to the Act, the trial court found no probable cause to warrant an evidentiary hearing on whether respondent was no longer an SVP. This court affirmed. *In re Commitment of Hughes*, No. 2-18-0116 (2d Dist. Nov. 7, 2018) (summary order).

¶ 5    In 2018, Dr. Deborah Nicolai conducted respondent's annual reexamination pursuant to the Act. In addition to interviewing respondent, Dr. Nicolai reviewed respondent's treatment progress, prior SVP and sexually dangerous person evaluations, criminal history, prior allegations and charges of sexual misconduct, and actuarial assessments. Dr. Nicolai's report included an overview of respondent's sex-offense history. Based upon respondent's sex-offending history with prepubescent children, Dr. Nicolai diagnosed him with pedophilic disorder, non-exclusive type, sexually attracted to females. Additionally, Dr. Nicolai diagnosed respondent with antisocial personality disorder based upon his "history of deceitfulness and repeated lying, impulsivity, reckless disregard for safety of self or others, consistent irresponsibility, and lack of remorse." According to Dr. Nicolai, the antisocial personality disorder increased respondent's predisposition to continue to engage in acts of sexual violence.

¶ 6    Dr. Nicolai reviewed respondent's scores on the Static-99R and Static-2002R actuarial assessments to evaluate respondent's risk of reoffending. Respondent's scores of one and three, respectively, placed him at an average risk of reoffending. However, Dr. Nicolai noted that the scores failed to adequately account for the pervasiveness of respondent's sex-offense history "and

appear to be an underrepresentation of his current risk to sexually reoffend." According to Dr. Nicolai, respondent also exhibited multiple aggravating risk factors that increased his risk of committing acts of sexual violence, including deviant sexual interest, poor cognitive problem solving, offense supportive attitudes, general lifestyle impulsivity, antisocial personality disorder, and resistance to rules and supervision.

¶ 7 Regarding protective factors that could lower the risk of sexual recidivism, Dr. Nicolai recognized respondent's age—62 years old at the time. However, she reported that some studies examining sex offender recidivism and age at release have been "criticized for [their] limitations" and that "one study found the effect of age at release depended on offense history." Dr. Nicolai also reported that respondent's age was accounted for in the actuarial assessments. Additionally, Dr. Nicolai reported that respondent had not participated in sex offender treatment groups while committed as an SVP and remained a "Non-Treatment Resident."

¶ 8 Dr. Nicolai concluded that "[d]ue to [respondent's] mental disorders and assessed risk, it is substantially probable that he will continue to engage in acts of sexual violence" and that respondent's condition had not changed since his last examination. Consequently, Dr. Nicolai found that respondent remained an SVP. Dr. Nicolai's report also specified that she read respondent the "Notice of Right to Petition for Discharge" form and respondent chose not to waive his statutory right to petition the court for discharge.

¶ 9 The State filed a motion for review of the reexamination report and argument in support of a finding of no probable cause. The public defender was appointed to represent respondent. Respondent also requested an examination by an independent evaluator, and the trial court appointed Dr. Luis Rosell.

¶ 10    Dr. Rosell interviewed respondent, and his review included respondent's treatment progress, prior evaluations, sex-offending history, and actuarial assessments. Dr. Rosell reported that, during the interview, respondent stated that he would avoid reoffending because he " 'can't see [himself] doing what [he] did in the past.' " Respondent stated that he learned about the sex-offense cycle while in prison and how to " 'get out of it.' " Respondent further stated that as a result of his experience in prison, he "cannot trust people" and thus refused to engage in further treatment.

¶ 11    Dr. Rosell diagnosed respondent with other specified personality disorder with antisocial features but reported that it was "difficult to determine if [respondent] meets criteria for pedophilic disorder" due to the disorder's fluctuation over time as respondent ages. Dr. Rosell supported his conclusion with "a summary of the age research over the past sixteen years." He likewise reported that respondent scored one and three, respectively, on the Static-99R and Static-2002R assessments. Dr. Rosell provided an overview of recidivism research and the effect of sex offender treatment on recidivism. Dr. Rosell concluded: "With regard to his current commitment, given his previous treatment, age and updated actuarial evaluation, in my opinion, he would [*sic*] does not meet the statutory threshold of a mental disorder that would make him substantially probable to engage in acts of sexual violence. Moreover, if the court takes into account the factors mentioned in the report[,] [] I believe he would be appropriate for conditional release and as [*sic*] he would agree to adhere to the sixty-three conditions required []."

¶ 12    After the submission of both reports, the trial court heard argument on the State's motion. At the outset of the hearing, the assistant public defender questioned "who goes first" and continued, "I guess the State filed a motion." The assistant attorney general responded, "We usually go first because we filed it. It is their burden, so." The trial court instructed, "Go ahead."

¶ 13    The State proceeded to argue that the ability to grant conditional release was essentially "foreclosed" because respondent was not in treatment, had refused treatment, and thus had made no progress in treatment since his most recent periodic reexamination report. Moreover, regarding the issue of eligibility for discharge, the State argued that respondent failed to meet his burden of setting forth plausible evidence that his condition had changed. Relying upon Dr. Nicolai's report, the State argued that respondent was ineligible for discharge because he continued to suffer from pedophilic disorder and remained substantially probable to commit acts of sexual violence. The State argued that Dr. Rosell's report essentially "rehashed" information set forth in a prior report. The State also cited *In re Commitment of Smego*, 2017 IL App (2d) 160335, and *In re Detention of Cain*, 402 Ill. App. 3d 390 (2010), in support of its argument that respondent's age alone was insufficient to warrant an evidentiary hearing.

¶ 14    Counsel for respondent argued that respondent had presented plausible evidence that respondent was no longer a sexually violent person and was thus entitled to an evidentiary hearing on the issue. Contrary to the State's position that "nothing had changed" since respondent's most recent periodic reexamination report in 2017, counsel pointed out that respondent had aged a year while remaining committed. Moreover, counsel recounted Dr. Rosell's report and argued that "what Dr. Rosell is saying is [respondent] does not have that mental disorder. He does not have a mental disorder that causes him serious difficulty controlling his behavior or that makes it substantially probable that he's going to reoffend in the future if he is not locked up."

¶ 15    Following arguments, the trial court found no probable cause to warrant an evidentiary hearing on whether respondent was no longer an SVP. In doing so, the trial court stated that it "had the opportunity to review [respondent's] file, had the opportunity to hear the arguments of the State and arguments of [the assistant public defender] ****." The trial court further stated that it had

reviewed the decisions in *Smego*, 2017 IL App (2d) 160335, and *Cain*, 402 Ill. App. 3d 390, as well as this court's prior decision in *Hughes*, No. 2-18-0116 (2d Dist. Nov. 7, 2018) (summary order), all of which rejected the argument that "he's one year older." The trial court found that Dr. Rosell's report was "missing certain elements that are required." But, the trial court stated, "It's not because of Dr. Rosell. Frankly, it's because of [respondent]. I mean this has already been— appeared to have been discussed and shown to [respondent] that you know what? Really, there's not going to be any further action taken until you comply and get treatment going forward." The trial court concluded that it did "not find that there is any plausible account here; and based on everything the [c]ourt has in front of it, its review, looking at the case law, looking at the progress made, the [c]ourt is going to make [a] finding of no PC."

¶ 16    Accordingly, the trial court entered a written order finding that "there is no probable cause to warrant an evidentiary hearing to determine whether the Respondent is still a sexually violent person pursuant to 725 ILCS 207/65(b)(2)" and that "Respondent's commitment status in secure care and treatment at the Department of Human Services Treatment and Detention facility is continued until further order of this Court."

¶ 17    Respondent timely appealed.

¶ 18                                II. ANALYSIS

¶ 19    Respondent argues on appeal that the trial court erred in finding no probable cause to hold an evidentiary hearing on whether he remained an SVP. He also argues that trial counsel was ineffective for failing to object to the State's argument regarding the standard for conditional release. We disagree.

¶ 20    Following the initial commitment under the Act, the DHS must reevaluate the individual's mental condition after six months and then annually to determine whether the committed

individual has made sufficient progress to be conditionally released or whether the individual's condition has so changed that he or she is no longer an SVP. See 725 ILCS 207/55(a) (West 2018); *People v. Botruff*, 212 Ill. 2d 166, 171 (2004). At the time of each reexamination, the committed individual must receive notice of the right to petition for discharge. 725 ILCS 207/65(b)(1) (West 2018). If the committed individual does not affirmatively waive that right, like respondent in this case, the trial court must set a probable cause hearing "to determine whether facts exist to believe that since the most recent periodic reexamination ***, the condition of the committed person has so changed that he or she is no longer a sexually violent person." See *id.* At the probable cause hearing, the trial court only reviews the reexamination reports and hears the parties' argument. *Id.*; *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 49. If the trial court finds probable cause, it must set an evidentiary hearing at which the State bears the burden of proving by clear and convincing evidence that the committed person is still an SVP. 725 ILCS 207/65(b)(2) (West 2018). Our review of the trial court's finding of no probable cause is *de novo*. *Kirst*, 2015 IL App (2d) 140532, ¶ 49.

¶ 21     The trial court's role at the probable cause hearing is "to determine whether the movant has established a *plausible account* on each of the required elements to assure the court that there is a substantial basis for the petition." (Emphasis in original and internal quotation marks omitted.) *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 62 (quoting *In re Detention of Hardin*, 238 Ill. 2d 33, 48 (2010)). Thus, a respondent is entitled to an evidentiary hearing only if there is probable cause to believe that the respondent no longer suffers from a mental disorder or is no longer dangerous to others because his or her mental disorder no longer creates a substantial probability that the respondent will engage in acts of sexual violence. *Stanbridge*, 2012 IL 112337, ¶ 68

(quoting 725 ILCS 207/5(f), 15 (West 2008)). Here, the record demonstrates that respondent failed to make such a showing.

¶ 22    Following her evaluation of respondent, Dr. Nicolai concluded that respondent continued to suffer from pedophilic disorder, nonexclusive type, sexually attracted to females, and antisocial personality disorder and that his antisocial personality disorder increased the likelihood that respondent would continue to engage in acts of sexual violence. While respondent's scores on the actuarial assessments placed him at an average risk of reoffending, Dr. Nicolai concluded that the scores underrepresented respondent's risk of reoffending in light of respondent's sex-offense history and other aggravating risk factors. Moreover, Dr. Nicolai reported that the protective factor of respondent's age was accounted for in the actuarial assessments. Thus, based upon Dr. Nicolai's report, the trial court properly found no probable cause to warrant an evidentiary hearing on whether respondent was no longer an SVP.

¶ 23    Respondent, however, relying upon Dr. Rosell's report, argues that he presented a plausible account that he is no longer an SVP and is thus entitled to an evidentiary hearing on the issue. See *Stanbridge*, 2012 IL 112337, ¶ 62. Namely, Dr. Rosell opined that respondent did not suffer from a "mental disorder that would make him substantially probable to engage in acts of sexual violence." According to respondent, the trial court failed to consider Dr. Rosell's report as well as trial counsel's argument that respondent was entitled to an evidentiary hearing based on the report. We disagree.

¶ 24    The Act specifies that the materials to be considered at the probable cause hearing include the reexamination reports and the parties' arguments. 725 ILCS 207/65(b)(1) (West 2018). The record demonstrates that this is precisely what the trial court considered. The reports of both Dr. Nicolai and Dr. Rosell were submitted to the trial court, and the parties proceeded with their

respective arguments. In ruling, the trial court specified that it "had the opportunity to review [respondent's] file[] [and] had the opportunity to hear the arguments of the State and arguments of [the assistant public defender] ****." The trial court explicitly referenced Dr. Rosell's report in finding that it was deficient. The trial court also affirmatively rejected counsel's argument that respondent's advancing age warranted a finding of probable cause, citing decisions that likewise rejected such an argument.

¶ 25    Moreover, the trial court is presumed to have considered all of the evidence unless affirmatively rebutted by the record. See *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 69. Nothing in the record suggests that the trial court failed to consider Dr. Rosell's report or the argument of respondent's counsel. To the contrary, as discussed, the trial court stated that it had considered these materials. Accordingly, respondent presents no persuasive basis upon which to hold that the trial court failed to consider Dr. Rosell's report or trial counsel's argument.

¶ 26    Respondent nevertheless maintains that the trial court erroneously applied the standard for conditional release rather than the standard for discharge. Separate and apart from seeking discharge under the Act, the Act sets forth a procedural mechanism for a committed individual to petition for conditional release if certain statutory requirements are satisfied. See 725 ILCS 207/60(a) (West 2018). In that instance, the trial court must hold a hearing to determine whether probable cause exists "to believe the person has made sufficient progress in treatment to the point where he or she is no longer substantially probable to engage in acts of sexual violence if on conditional release ****." 725 ILCS 207/60(c) (West 2018). If probable cause is established, then the trial court must hold an evidentiary hearing on the issue and grant the petition unless the State shows by clear and convincing evidence that the committed person has not made the sufficient progress in treatment to be conditionally released. See 725 ILCS 207/60(d) (West 2018).

¶ 27    Respondent points to the trial court's findings that Dr. Rosell's report was "missing certain elements that are required," that "it's because of [respondent]," and that "there's not going to be any further action taken until you comply and get treatment going forward." According to respondent, these findings demonstrate that the trial court improperly based its decision on respondent's lack of progress in treatment—the standard for conditional release, not discharge.

¶ 28    However, the trial court "is presumed to know the law and apply it properly" absent "strong affirmative evidence to the contrary" to rebut that presumption. *People v. Howery*, 178 Ill. 2d 1, 32 (1997). Here, respondent presented no such evidence. The record demonstrates that the trial court considered the reexamination reports and the parties' arguments and rejected respondent's contention that age alone warranted a finding of probable cause that he is no longer a sexually violent person. The trial court's mere admonition to respondent to seek treatment did not demonstrate that the trial court applied the standard for conditional release. Indeed, the trial court's written order reflects its finding that "there is no probable cause to warrant an evidentiary hearing to determine whether the Respondent is still a sexually violent person pursuant to 725 ILCS 207/65(b)(2)"—the standard for discharge. Accordingly, we reject respondent's argument that the trial court erroneously applied the standard for conditional release.

¶ 29    We note that even if respondent were correct that the trial court improperly applied the standard for conditional release, on *de novo* review, we determine the correctness of the trial court's judgment, not its reasoning. See *In re Commitment of Tittelbach*, 2018 IL App (2d) 170304, ¶ 30 ("[A]lthough respondent contends in part that the trial court overemphasized his status in treatment, we need not address this matter separately. On *de novo* review, we decide the correctness of the court's judgment, not its reasoning."). As set forth above, our review of the

record leads us to agree with the trial court's conclusion that there was no probable cause shown to warrant an evidentiary hearing on whether respondent was no longer an SVP.

¶ 30    As a final matter, respondent contends that he was denied the effective assistance of counsel when his trial counsel failed to object to the State's argument regarding respondent's inability to seek conditional release due to lack of progress in treatment. The familiar framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies when a respondent in a commitment proceeding alleges deficient legal representation. *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 20. Thus, the respondent must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* To establish deficient performance, the respondent must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. *Id.* Respondent must prove both *Strickland* prongs to prevail on an ineffective-assistance-of-counsel claim. *Id.* We review *de novo* the ultimate issue of whether counsel's representation was ineffective. See *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008).

¶ 31    Here, respondent fails to establish either deficient performance or prejudice. Respondent's counsel reasonably could have declined to object to the State's reference to the standard for conditional release to avoid drawing attention to the fact that respondent had refused treatment. See *People v. Perry*, 224 Ill. 2d 312, 344 (2007) (stating that decisions about " 'what matters to object to and when to object' are matters of trial strategy"). We note in this regard that respondent's counsel proceeded to properly address the discharge standard in his argument to the trial court, stating, "We just have to present some plausible account that [respondent] is no longer a sexually violent person ****." Moreover, respondent cannot establish prejudice under *Strickland*. As

discussed, the record demonstrates that the trial court properly found no probable cause to warrant an evidentiary hearing on whether respondent was no longer an SVP. Accordingly, even if trial counsel had objected to the State's discussion of conditional release, there is no reasonable probability that the result of the proceeding would have been different.

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 34    Affirmed.