# Illinois Official Reports

## Appellate Court

---

**In re Commitment of Vance, 2017 IL App (3d) 160683**

---

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF JAMES VANCE (The People of the State of Illinois, Petitioner-Appellee, v. James Vance, Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-16-0683 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | July 3, 2017<br><br>August 8, 2017<br>August 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 05-MR-91; the Hon. Paul P. Gilfillan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Samuel L. Snyder, of Peoria, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Michael M. Glick and Brian McLeish, Assistant Attorneys General, of counsel), for the People. |

JUSTICE LYTTON delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justice Wright concurred in the judgment and opinion.


## OPINION

¶ 1     Respondent, James Vance, appeals from the trial court's order, finding that probable cause did not exist to warrant an evidentiary hearing to determine if respondent was no longer a sexually violent person. On appeal, respondent argues that the court erred in granting the State's motion for a finding of no probable cause. We affirm.

¶ 2                                    FACTS

¶ 3     In September 2009, respondent was adjudicated a sexually violent person under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2008)) and committed to the Department of Human Services (DHS). After a December 2009 dispositional hearing, the court ordered respondent placed in a secure facility for institutional care and custody.

¶ 4     On May 4, 2016, Dr. Richard Travis conducted a 77-month reevaluation as required by the Act. Following his evaluation, the State filed a motion for a finding of no probable cause to believe that respondent was no longer a sexually violent person under section 65 of the Act (725 ILCS 207/65(b) (West 2016)) and attached Dr. Travis's reevaluation report in support of its claim.

¶ 5     In his report, Dr. Travis concluded that respondent should continue to be found a sexually violent person and remain in DHS custody. He based his evaluation on numerous sources, including his review of respondent's criminal history, an interview with respondent, and DHS treatment progress reports.

¶ 6     Travis noted that respondent's underlying sexual offense occurred from January to June of 1993. During those six months, defendant sexually assaulted his five-year-old stepdaughter by penetrating her mouth, vagina, and anus with his penis on several occasions. Respondent also revealed to investigators that three years before he assaulted his stepdaughter he sexually assaulted an eleven-year-old girl. He was charged with four counts of aggravated criminal sexual assault and pleaded guilty to one count. The trial court sentenced him to 20 years in prison. After his release in 2003, respondent violated his parole twice by leaving home without permission and having direct contact with a minor.

¶ 7     Based on his review of the record and respondent's interview, Travis concluded that respondent met the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, DSM-5 (2013) criteria for (1) pedophilic disorder, nonexclusive type, sexually attracted to females; (2) other specified personality disorder, with antisocial and histrionic features; (3) alcohol use disorder and cannabis use disorder, in sustained remission in a controlled environment; and (4) other specific anxiety disorder, limited-symptom attacks. Travis opined that respondent continued to pose a substantial risk of reoffense and that "his current dynamic risk factors and treatment needs fall within the high range."

¶ 8        Travis also used the Static-99R and Static-2002R evaluations. Respondent's scores on both actuarial assessments placed him in the low to moderate risk category. However, respondent displayed several additional factors shown to increase risk of reoffense, including (1) sexual interest in children, (2) any personality disorder, (3) MMPI Pd Scale elevated, (4) general self-regulated problems, (5) poor problem solving skills, (6) employment instability, (7) substance abuse, (8) pro-criminal attitudes, (9) childhood behavior problems, (10) attitudes tolerant of sexual crimes, and (11) violation of conditional release. In support of the additional risk factors, Travis reported that respondent violated the conditions of his mandatory supervised release by having contact with and kissing a minor female. He also noted that respondent was arrested in 2005 for a parole violation and that a search of his residence produced a videotape containing numerous images of naked children. Travis concluded that these additional risk factors supported the use of a "high risk/high needs" designation as respondent's risk assessment.

¶ 9        Travis reported that no protective factors decreased respondent's risk of reoffense. He noted that respondent had not completed sex offender treatment and failed to attend treatment to address his sex offense history. Although respondent began participating in sex offense specific treatment, he withdrew from the program during the review period. Travis also stated that respondent's age of 49 did not merit reduction in his risk assessment beyond that already reflected in his actuarial scores.

¶ 10       After reviewing respondent's commitment history and DHS treatment reports, Travis stated that respondent's condition has not changed since the most recent reexamination. He highlighted respondent's sporadic participation in sex offense treatment and noted that respondent "is not yet fully engaged in sex-offense-specific treatment." He also noted that respondent had previously reported disturbing sexual thoughts about his offending history and recently indicated that those troubling thoughts and nightmares continued. Travis concluded that respondent had not made sufficient progress in treatment to merit conditional discharge.

¶ 11       Respondent filed a motion seeking the appointment of an independent expert, which the trial court granted. On June 17, 2016, respondent then filed his response to the State's motion for a finding of no probable cause. At a subsequent status hearing in September, counsel for respondent informed the court that respondent would not be using the report authorized by his independent expert, Jane Velez, and would only be using her as a consultant.

¶ 12       At the probable cause hearing, the State argued, based on Travis's report, that there was no probable cause to warrant an evidentiary hearing. Respondent countered that he had attended treatment sessions, learned from those sessions, and made sufficient progress for conditional release or discharge.

¶ 13       The trial court stated that it had read and considered the reexamination report and concluded there was no probable cause for an evidentiary hearing. The court then granted the State's motion.

¶ 14                                    ANALYSIS

¶ 15       Respondent's sole contention on appeal is that the trial court erred in finding no probable cause was shown to warrant an evidentiary hearing to determine whether he is still a sexually violent person.

¶ 16    Following a commitment under the Act, the DHS is responsible for evaluating the individual's mental condition within 6 months of the initial commitment and again thereafter at least every 12 months. 725 ILCS 207/55(a) (West 2016). The purpose of these examinations is to determine if the committed individual has made sufficient progress to be conditionally released or discharged. 725 ILCS 207/55(a) (West 2016).

¶ 17    At the time of each reexamination under the Act, the committed person receives notice of the right to petition the circuit court for discharge. 725 ILCS 207/65(b)(1) (West 2016). If the committed person does not affirmatively waive that right, like respondent in this case, the court must "set a probable cause hearing to determine whether facts exist to believe that since the most recent periodic reexamination ***, the condition of the committed person has so changed that he or she is no longer a sexually violent person." 725 ILCS 207/65(b)(1) (West 2016). At a probable cause hearing, the court only reviews the reexamination reports and hears the parties' arguments. 725 ILCS 207/65(b)(1) (West 2016). If the court finds that probable cause does exist, it must set an evidentiary hearing on the issue. 725 ILCS 207/65(b)(2) (West 2016). Since the trial court only considers the reexamination reports and other documentary evidence, our review of the court's finding of no probable cause is *de novo*. See *In re Commitment of Wilcoxen*, 2016 IL App (3d) 140359, ¶ 28.

¶ 18    At a probable cause hearing, the trial court's role is "to determine whether the movant has established a *plausible account* on each of the required elements to assure the court that there is a substantial basis for the petition." (Emphasis in original and internal quotation marks omitted.) *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 62 (quoting *In re Detention of Hardin*, 238 Ill. 2d 33, 48 (2010)). For a respondent to receive an evidentiary hearing under section 65(b)(2) of the Act, the court must find a plausible account exists that the respondent is "no longer a sexually violent person." 725 ILCS 207/65(b)(2) (West 2016). Thus, a respondent is only entitled to an evidentiary hearing if plausible evidence shows that the respondent (1) no longer suffers from a mental disorder or (2) is no longer dangerous to others because his or her mental disorder no longer creates a substantial probability he or she will engage in acts of sexual violence. *Stanbridge*, 2012 IL 112337, ¶ 68; 725 ILCS 207/5(f), 15(b) (West 2016). Under the Act, "substantially probable" means "much more likely than not." *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 37.

¶ 19    This case advanced to a discharge proceeding after respondent elected not to waive his right to petition for discharge. See 725 ILCS 207/65(b)(1) (West 2016). After the filing of the State's motion for a finding of no probable cause, which was accompanied by Travis's reexamination report, the court set the matter for a probable cause hearing. Because respondent did not actively petition for a discharge, the probable cause hearing consisted only of a review of the reexamination report and arguments on behalf of the parties. See 725 ILCS 207/65(b)(1) (West 2016).

¶ 20    At the hearing, respondent had to present sufficient evidence to warrant an evidentiary hearing to determine whether he is "no longer a sexually violent person." 725 ILCS 207/65(b)(2) (West 2016). To satisfy this standard, respondent was required to present evidence that he no longer meets the elements for commitment because he (1) no longer has a mental disorder or (2) is no longer dangerous to others because his mental disorder no longer creates a substantial probability that he will engage in acts of sexual violence. See *Stanbridge*, 2012 IL 112337, ¶ 68.

¶ 21     Respondent did not satisfy his burden. The evidence at the probable cause hearing consisted only of the report provided by the State's evaluator, Dr. Travis. Travis's report diagnosed respondent with pedophilic disorder and other specified personality disorder. This diagnosis was based on Travis's review of respondent's records, which indicated that respondent suffered from recurrent intense sexually arousing thoughts about his offending history with his five-year-old stepdaughter. Respondent's records also showed that he violated his parole and that a search of his residence revealed a videotape with images of naked children. Travis documented that respondent was at a high risk of reoffending. Travis's report also stated that respondent withdrew from DHS treatment and failed to complete sex offense specific therapy. This evidence established that respondent continued to suffer from a mental disorder and that his mental disorder continued to create a substantial probability that he will engage in acts of sexual violence. See 725 ILCS 207/5(f), 15(b) (West 2016). Therefore, the trial court did not err in granting the State's motion for a finding of no probable cause to warrant an evidentiary hearing.

¶ 22                                                    CONCLUSION
¶ 23     The judgment of the circuit court of Tazewell County is affirmed.

¶ 24     Affirmed.