# Illinois Official Reports

## Appellate Court

*In re Commitment of Smego*, 2017 IL App (2d) 160335

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF RICHARD SMEGO (The People of the State of Illinois, Petitioner-Appellee, v. Richard Smego, Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-16-0335 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | May 12, 2017<br><br>November 2, 2017<br>November 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 05-MR-1464; the Hon. Victoria A. Rossetti, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kevin P. Malia, of Malia & Rinehart, P.C., of Waukegan, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Evan B. Elsner, Assistant Attorneys General, of counsel), for the People. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Spence concurred in the judgment and opinion.


**OPINION**

¶ 1        In 2009, respondent, Richard Smego, was adjudicated a sexually violent person (SVP) under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2008)) and committed to the custody of the Department of Human Services (DHS). He now appeals a judgment denying, without an evidentiary hearing, his petition for conditional release (see 725 ILCS 207/60 (West 2014)). We affirm.

¶ 2        In 2005, the State petitioned to have respondent committed as an SVP, based on his 1995 convictions of aggravated criminal sexual abuse (720 ILCS 5/12-16(a)(1) (West 1994)) and other offenses. The victim was a 14-year-old male. The court found probable cause to detain respondent, and he was committed to the DHS. On June 17, 2009, the parties stipulated that Drs. Joseph Proctor and Raymond Wood had evaluated respondent, and Proctor would testify that respondent had "Paraphilia Not Otherwise Specified [(NOS)], Sexually Attracted to Both"; Wood would testify that respondent had "Paraphilia Not Otherwise Specified, Sexually Attracted to Non-Consenting Adolescent Males, Nonexclusive [T]ype"; and both would testify that the respondent's mental disorder made it substantially probable that he would engage in future acts of sexual violence (see 725 ILCS 207/5(f) (West 2008)). On that day, by an agreed order, the trial court found that respondent was an SVP and committed him to the DHS until further order.

¶ 3        Respondent was reevaluated periodically (see 725 ILCS 207/55(b) (West 2010)), and each time, the trial court found no probable cause to hold a hearing on whether he was still an SVP in need of treatment on a secure basis. On January 15, 2013, the State moved for a finding of no probable cause, submitting the report of Dr. Kimberly Weitl. On January 22, 2013, the trial court granted the State's motion and continued respondent's confinement.

¶ 4        On June 26, 2014, the State moved for a finding of no probable cause, and respondent petitioned for conditional release. The State's motion attached a report by Dr. Steven Gaskell. Respondent requested that the court appoint Dr. Luis Rosell as his expert. Rosell had examined respondent in 2012.

¶ 5        Rosell's report was delayed. On June 25, 2015, the State again moved for a finding of no probable cause; its motion attached a report by Gaskell, dated June 4, 2015. We summarize the five pertinent reports, in chronological order.

¶ 6        In Weitl's report, dated December 8, 2012, and based on an evaluation that she conducted on October 30, 2012, and December 8, 2012, she stated as follows. At one point, respondent had said that he had sexually abused between 10 and 30 adolescents, ages 13 to 17, for which no charges had been brought. Most of the victims were male. Respondent withdrew from treatment in 2010 but started over in January 2012. He was still in the second phase of the five-phase program. Respondent had scored eight on the Static-99; this placed him in the high-risk category for recidivism. He had also scored in the high-risk range on the Minnesota

Sex Offender Screening Tool-Revised. Additionally, he had several risk factors for which these tests did not account, including having been emotionally abused as a child, deviant sexual interests, intimacy deficits, and preoccupation with sex. His limited treatment experience, age (then 46), and medical condition were not protective factors. Weitl recommended continued confinement, given the substantial risk that respondent would reoffend.

¶ 7    In Rosell's first report, dated December 12, 2012, he stated as follows. He evaluated respondent on August 17, 2012, and September 6, 2012. In 1994, respondent abducted a 14-year-old male at knifepoint, drove him to a warehouse, and sexually assaulted him. In 2005, respondent drove to Las Vegas with three other people and was accused of sexually assaulting a 17-year-old male; an investigation turned up inconsistencies in the accusation, and no charges were brought. Respondent told Rosell that he had previously withdrawn from treatment after being sexually assaulted by a member of his treatment group but then was forced to remain in the group.

¶ 8    Rosell noted that Proctor, Wood, and subsequent evaluators had diagnosed respondent with paraphilia, not otherwise specified. Rosell stated, however, that "[t]he clinical diagnosis of mental disorders in the [American Psychiatric Association's diagnostic manual (DSM)] does not exist for legal purposes. The legal definition involves impairments and the issue of emotional or volitional capacity. These areas are not covered in the DSM nomenclature." Further, "whether Paraphilia, NOS, sexually attracted to nonconsenting persons is a legitimate diagnosis is controversial in the field."

¶ 9    Rosell also stated that risk-prediction tools such as the Static-99 had proven to be highly imprecise. According to Rosell, respondent's score of three on the Static-99 placed him in "the low-moderate range relative to other sex offenders." Rosell noted that Wood and Weitl had scored respondent higher, but he explained, "This was based on considering his 2005 violation as a sexual offense even though he was never charged with one." Respondent's score on the Static-2002R was four, placing him in the low-moderate range for likelihood of reoffending. Finally, his score of two on the MATS-1, a newer actuarial tool, placed him in the moderate range.

¶ 10    Rosell recommended conditional release for respondent. He believed, to a reasonable degree of psychological certainty, that because respondent was "lower risk compared to the majority of individuals who are currently [SVPs, respondent] could be supervised, managed and treated in the community."

¶ 11    We turn to Gaskell's 2014 report. It summarized respondent's criminal history. In addition to the 1994 offenses, it noted that, in November 1994, the son of respondent's girlfriend reported that respondent had sexually abused him in 1993 and might have molested the girlfriend's other son. In September 2005, respondent was arrested for violating his parole by going to Las Vegas. He denied having sex with anyone during his unauthorized absence. He did admit to Gaskell that, starting in 1980, he had sexually assaulted a total of 10 males.

¶ 12    Gaskell reported that respondent scored six on the Static-99R, placing him in "the High Risk category for being charged [with] or convicted of another sexual offense." He scored six on the Static-2002R, placing him in "the Moderate Risk Category." Also, respondent had several empirical risk factors that were not measured by the foregoing risk-assessment tools:

deviant sexual interests, impulsiveness or recklessness, noncompliance with supervision, early onset of sex offending, and intimate relationship conflicts.

¶ 13    Gaskell noted that, during the past year, respondent had reentered the second phase of the five-phase treatment program. He was working on his sexual-offense timeline and "ha[d] yet to accept full responsibility for his sexual offense or to work on his sexual assault cycle." He had not yet developed a relapse-prevention plan. According to Gaskell, respondent's progress in treatment was not "sufficient to reduce his substantial risk for sexually violent re-offending." Gaskell opined that it was substantially probable that respondent would engage in acts of sexual violence in the future. He recommended that respondent remain committed in the DHS facility.

¶ 14    Gaskell's second report, filed June 4, 2015, and based on an evaluation conducted on May 5, 2015, stated in pertinent part as follows. Respondent's treatment-plan review of July 31, 2014, showed that he had actively participated in treatment. He had made progress in the second phase of treatment and had told Gaskell that he had completed his sexual-offense timeline and anticipated moving into the third phase of treatment in the coming year. He said that he had no desire to reoffend.

¶ 15    Gaskell opined that respondent met the DSM criteria for "Other Specified Paraphilic Disorder, Sexually Attracted to Nonconsenting Males, Nonexclusive Type." Respondent had scored six on the Static-99R, placing him in the high-risk category for being charged with or convicted of a sexual offense. He had scored six on the Static-2002R, placing him in the moderate-risk category. Moreover, he had the other empirical risk factors noted in the 2014 report. His age (then 48) had not been consistently found to be associated with decreased risk of recidivism.

¶ 16    Gaskell opined that respondent had not made sufficient progress in treatment to be placed on conditional release. Although he had participated in treatment over the preceding year, he had not accepted full responsibility for his offenses, completed his sexual-assault cycle, or developed a relapse-prevention plan. In short, he had not made "sufficient progress to lower his risk." Gaskell opined that, to a reasonable degree of psychological certainty, it was substantially probable that respondent would engage in sexual violence in the future.

¶ 17    Rosell's second report was dated September 15, 2015, and based on an evaluation conducted June 24, 2015. Under the heading "Current Evaluation," it noted the following. Respondent reported that he had few sexual thoughts, none deviant, and that his sexual desire was slight. He wanted to reside in the Chicago or Waukegan area and had been offered work as a paralegal with a Chicago law firm.

¶ 18    Under "Previous Diagnoses," Rosell reiterated his 2012 statement that the clinical diagnosis of a mental disorder in the DSM "does not exist for legal purposes," as the legal definition involves impairments and volitional capacity. Also, the diagnoses that Gaskell and other examiners had made of respondent had not been accepted in the DSM. Under "Assessing Risk," Rosell reiterated his criticisms of predictive tools and stated, as he had in his 2012 report, that respondent actually scored three on the Static-99R and that this placed him in "the low-moderate range relative to other sex offenders." Also, on the Static-2002R, respondent scored four, placing him in the moderate range. On the MATS-1, respondent scored two, placing him in the "medium range."

¶ 19    Rosell's report concluded as follows:

"Under typical but not all circumstances, the concept of sufficient progress is interpreted by evaluators as representing progress made though treatment efforts by the respondent. This concept is also viewed as representing the amount necessary to move the person's risk level from the time of commitment to a level below substantially probable. Therefore, as I opined previously, [respondent] has made sufficient progress for the court to consider that he be placed on conditional release. The protective factors [include] treatment understanding, one known victim, time in the community without reoffending, over twenty years since his last sexual offense, low-moderate risk on three actuarial instruments and an appropriate release plan. In my opinion, I believe to a reasonable degree of psychological certainty that because he is lower risk compared to the majority of the individuals who are currently sexually violent persons, [respondent] could be supervised, managed and treated in the community."

¶ 20        On April 6, 2016, after hearing arguments, the trial court granted the State's motion for a finding of no probable cause and denied respondent's petition for conditional release.[1] He timely appealed.

¶ 21        On appeal, respondent contends that he met the threshold for obtaining an evidentiary hearing on his petition. The governing provision is section 60(c) of the Act:

"The court shall set a probable cause hearing as soon as practical after the examiners' reports are filed. The probable cause hearing shall consist of a review of the examining evaluators' reports and arguments on behalf of the parties. If the court finds probable cause to believe the person has made sufficient progress in treatment to the point where he or she is no longer substantially probable to engage in acts of sexual violence if on conditional release, the court shall set a hearing on the issue." 725 ILCS 207/60(c) (West 2014).

¶ 22        Respondent notes that, although Gaskell recommended denying conditional release, Rosell recommended granting it. He argues that the trial court was not allowed to credit one expert opinion over the other but was limited to deciding whether respondent was entitled to an evidentiary hearing at which the ultimate factual and legal issues could be decided. He reasons that there was sufficient evidence at the preliminary stage to warrant a hearing.

¶ 23        Whether respondent met the probable-cause threshold is an issue of law, which we review *de novo*. *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 56. In a probable-cause hearing on a petition for conditional release, a respondent must only " ' "establish a *plausible account* on each of the required elements to assure the court that there is a substantial basis for the petition." ' " (Emphasis in original.) *Id.* ¶ 58 (quoting *In re Detention of Hardin*, 238 Ill. 2d 33, 48 (2010), quoting *State v. Watson*, 595 N.W.2d 403, 420 (Wis. 1999)). The court must consider the reasonable inferences that can be drawn from the evidence, but it must not choose between conflicting facts or inferences or engage in a full and independent evaluation of an expert's credibility and methodology. *Id.*

---

[1]In explaining her decision, the trial judge mistakenly cited the statutory requirements for discharge (see 725 ILCS 207/65 (West 2014)), not for conditional release. The error is of no consequence, as our review is *de novo*, and we are concerned with the correctness of the judgment and not the reasoning given in support.

¶ 24    It is important to note, however, that in a postcommitment hearing on a petition for discharge or conditional release, the validity of the original commitment order is *not* at issue. In setting out the burden imposed on a petitioner who seeks an outright discharge on the basis that he is no longer an SVP (see 725 ILCS 207/65 (West 2014)), the *Stanbridge* court noted that, in that situation, a court has already found that the petitioner is an SVP. See *Stanbridge*, 2012 IL 112337, ¶ 72. Thus, even at this preliminary stage, the petitioner must present some plausible evidence of a change in the circumstances that led to the original finding. *Id.* The change in circumstances can be one "in the committed person, *** in the professional knowledge and methods used to evaluate a person's mental disorder or risk of reoffending, or even *** in the legal definitions of a mental disorder or a sexually violent person, such that a trier of fact could conclude that the person no longer meets the requisite elements." *Id.*

¶ 25    On a petition for conditional release, there is no more basis to challenge the court's original finding that the petitioner was an SVP who must be committed to the custody of the DHS and for whom conditional release is not appropriate (see 725 ILCS 207/40(b)(2), (b)(3) (West 2014)). Thus, even at the preliminary probable-cause stage, the propriety of the original finding is not at issue, and the petitioner cannot show the required change in circumstances merely by casting doubt on the original commitment order. Because the petitioner has not yet obtained conditional release, and has recently been found not to merit it, he must allege and eventually prove changed circumstances that support the requested relief. And it follows that, at the probable-cause hearing, the plausible evidence that is required is of changed circumstances such that " 'it is not substantially probable that the person will engage in acts of sexual violence if on *** conditional release.' " *Stanbridge*, 2012 IL 112337, ¶ 54 (quoting 725 ILCS 207/60(c) (West 2008)).

¶ 26    We turn to respondent's argument on appeal. He contends that Rosell's report, and other evidence before the trial court, provided the needed quantum of proof for his petition to survive initial scrutiny and move to an evidentiary hearing. Respondent notes that, since the previous no-probable-cause finding, he completed more of his treatment, although, as of the court's ruling, he was still in the second phase of the five-phase program. Respondent also notes that Rosell gave him relatively favorable scores on the risk-assessment tools and opined that he would be suitable for conditional release.

¶ 27    We do not find respondent's arguments persuasive. Of course, we recognize that, in the period between the most recent no-probable-cause finding and the trial court's ruling, respondent did complete *some* additional therapy. That does little to support a finding that he had made sufficient "*progress in treatment*" (emphasis added) (725 ILCS 207/60(c) (West 2014)) such that it was no longer substantially probable that he would engage in acts of sexual violence were he released. Moreover, that respondent was still in the second stage of a five-stage program that has been deemed necessary and appropriate to reduce this probability cuts strongly the other way.

¶ 28    Rosell's interpretation of the actuarial risk-assessment tests was also of little value toward resolving the question of whether respondent had made sufficient progress in therapy since his previous periodic reexamination. In his 2015 report, Rosell gave respondent more favorable scores than had Weitl in 2012 or Gaskell in either 2014 or 2015. But this was because of Rosell's disagreement with their methodology. There was little difference between Rosell's assessment of respondent in 2012 and his assessment in 2015. Thus, Rosell's differences with Weitl and Gaskell went to the validity of the earlier adjudications of

respondent's risk level and had no independent significance beyond calling into question judicial decisions that had been settled when respondent filed his petition for conditional release. And Rosell's conclusion that respondent is less likely to reoffend than other SVPs was likewise based on his different methodology, not on any progress in therapy that respondent had made since his last reexamination.

¶ 29 Respondent also contends that his age was a protective factor to which the trial court should have given more weight. However, respondent does not suggest how his age alone, which Weitl and Gaskell rejected as a protective factor, would create probable cause to believe that it was no longer substantially probable that he would reoffend if released.

¶ 30 In sum, although the probable-cause threshold is not high, neither is it minimal. The trial court did not err in finding that respondent had not satisfied it and in denying him an evidentiary hearing on his petition for conditional release.

¶ 31 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 32 Affirmed.