2019 IL App (2d) 180432-U
No. 2-18-0432
Order filed November 5, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF JAMES BICE | ) ) ) ) ) | Appeal from the Circuit Court of Lake County. <br><br> No. 00-MR-1076 |
| (The People of the State of Illinois, Petitioner-Appellee, v. James Bice, Respondent-Appellant). | ) ) ) ) | Honorable Christopher R. Stride, Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*: In two cases, the trial court properly found no probable cause for an evidentiary hearing on whether respondent was no longer an SVP: in the first, it was irrelevant that the examiner's diagnoses and methodology were different from the prior examiner's, as both reached the same conclusion; in the second, the examiner did not rely exclusively on factors that respondent could not control while confined, respondent did not show a need for an independent evaluator, and his commitment was not subject to the eighth amendment.

¶ 2    Respondent, James Bice, appeals judgments, entered in consecutive proceedings under section 65(b)(1) of the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/65(b)(1) (West 2016)), finding no probable cause for an evidentiary hearing on whether he remained a sexually violent person (SVP) (see *id.* § 5(f)).  The first judgment was entered on March 7, 2018,

and the second was entered on May 9, 2018. Because respondent is simultaneously appealing from two unrelated judgments, we address each judgment separately. In the first appeal, he argues that the judgment was erroneous. In the second appeal, he argues that (1) the judgment was erroneous; (2) the court erred in denying him an independent evaluator (see *id*. § 55(a)); and (3) as applied, the Act is cruel and unusual punishment (see U.S. Const., amend. VIII). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The deep background is given in detail in our 2018 opinion affirming a finding of no probable cause based on a 2015 reexamination report by Dr. Joseph Proctor. See *In re Commitment of Bice*, 2018 IL App (2d) 170148. This appeal is of similar rulings that were based on reevaluation reports by Dr. Amy Louck Davis in October 2016 and October 2017. We summarize the background facts, then turn to those directly pertinent here.

¶ 5     Respondent was born September 16, 1982. In 1995 he was adjudicated a delinquent minor, based on his commission of the aggravated criminal sexual abuse of his younger half-sister, and was sentenced to the juvenile division of the Department of Corrections (DOC). In 2000, the State petitioned to declare him an SVP. At all pertinent times, the Act has defined an SVP as "a person who has been convicted of a sexually violent offense *** and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2000).

¶ 6     The cause was continued numerous times. In 2010, the parties stipulated that the State could prove that respondent was an SVP; that he would be examined by an evaluator from the Department of Human Services (DHS) and an evaluator of his choice; and that he would be committed to the DHS until he was no longer sexually violent. In January 2012, Proctor submitted a reevaluation report, stating that respondent was still an SVP, that he suffered from two mental

disorders, pedophilia and personality disorder, not otherwise specified; and that he needed continued confinement in a DHS facility. In March 2012, Dr. Kirk Witherspoon submitted an evaluation stating that responded did not meet the criteria for pedophilia or for an SVP. In October 2012, the trial court continued respondent's confinement.

¶ 7    In October 2013, the State moved for a finding of no probable cause, based on Proctor's reexamination report of that month. In December 2013, respondent petitioned for conditional release (see 725 ILCS 207/60 (West 2012)). In November 2014, the State moved for a finding of no probable cause, relying on Proctor's reexamination report of the previous month. In January 2015, the court denied respondent's petition, found no probable cause, and continued respondent's confinement.

¶ 8    In October 2015, the State moved for a finding of no probable cause, relying on Proctor's reexamination report of that month. The court continued the cause several times, primarily at respondent's requests. In September 2016, the court heard arguments on the motion, then continued the cause to October and then to November. The arguments were based on Proctor's 2015 report. After the September 2016 proceeding, Louck Davis filed her October 2016 reexamination report, based on her September 2016 examination of respondent.

¶ 9    In October 2016, based on Louck Davis's report, respondent moved to reopen the proofs. His motion noted that Louck Davis's report disagreed with Proctor's 2015 report in that she opined that respondent did not meet the criteria for pedophilia and that Proctor had improperly used actuarial tools to determine the reoffense risk of a person who had committed his sex offense before age 17. Louck Davis's report noted that respondent had made progress in treatment in the previous year. However, it also concluded that he met the criteria for (1) unspecified paraphilic disorder, in a controlled environment, and (2) other specified personality disorder; that based on

nonactuarial risk-measurement tools his level of risk to reoffend was "Above Average"; and that he was an SVP who had not made sufficient progress in treatment to be considered for conditional release. Thus, Louck Davis disagreed with one of Proctor's diagnoses and much of his methodology but agreed with his ultimate conclusions and recommendations.

¶ 10    In January 2017, the trial court denied the motion to reopen proofs, explaining that the 2016 report was not germane to the issues raised in the State's pending 2015 motion. In February 2017, the court granted the State's motion.

¶ 11    We affirmed. We held that the court had not abused its discretion in refusing to consider the superseding 2016 reexamination report, which was issued after the parties had rested in the proceeding based on the 2015 report. *Bice*, 2018 IL App (2d) 170148, ¶ 49.

¶ 12                            FIRST PROCEEDING ON APPEAL

¶ 13    On February 8, 2017, the State moved for a finding of no probable cause, based on Louck Davis's 2016 report. In addition to what we noted earlier, the report stated the following. In April 2016, respondent had been cited for horseplay, a minor violation. He was currently in phase two of the five-phase treatment program and was "participating well *** specifically [in] Disclosure Group and Distortions Group." He "show[ed] a strong commitment to treatment during the review period."

¶ 14    As noted, Louck Davis diagnosed respondent with (1) unspecified paraphilic disorder in a controlled environment and (2) other specified personality disorder, borderline, schizoid, and antisocial traits. The first diagnosis was based on his long history of "sexually problematic behaviors" including sexual offenses against younger peers when he was under 16, violating rules related to sexual activity in institutional settings, and voyeurism and exhibitionism. The second was based on respondent's identity disturbance and impulsivity (borderline personality disorder),

social and interpersonal deficits and odd beliefs (schizotypal personality disorder), and disregard for others' rights (antisocial personality disorder).

¶ 15    Under the heading "Issue of Risk," Louck Davis's report stated as follows. No actuarial instruments were appropriate for respondent. The proper approach was "structured professional judgment," using tools such as the Sexual Violence Risk-20 (SVR-20) and the STABLE 2007, which measure dynamic risk in young offenders. On the former, 3 of the 20 factors were present to "a high degree" for respondent: he was a victim of sexual abuse, he lacked mature intimate relationships, and he lacked employment experience. Four were present to a "moderate degree": sexual deviance, past nonsexual violent offenses, multiple sexual offense types, and a lack of realistic plans. On the latter test, numerous risk factors were present. There were "[s]erious concern[s]" regarding "the lack of Capacity for Relationship Stability" and "the Emotional Identification with Children" and "[s]ome concern" with the paucity of positive social influence, impulsivity, sexual preoccupation, deviant sexual preference, and several other factors.

¶ 16    The risk assessment also discussed the degree to which protective factors applied. On the first, the successful completion of sexual-offense-specific treatment, respondent had participated in treatment for several years and had made "some progress, particularly in this most recent re-examination period." However, he still had difficulty with immature attitudes and sexually inappropriate behaviors. He was in "an early phase of treatment" and had yet to develop a sexual-offense cycle or significant plans for preventing reoffending. Thus, "[n]o treatment-based risk reduction [was] warranted at this time." The other two factors, a serious and debilitating medical condition and increased age, did not apply. Overall, respondent's risk of reoffending was higher than average.

¶ 17   Under "Conclusion," the report stated that respondent remained an SVP and had not made sufficient progress in treatment to be considered for conditional release. The report added, "It is important to note though, that he has made progress and is capable of the improvement necessary to achieve conditional release in the future."

¶ 18   On August 9, 2017, respondent filed a response to the State's motion. He noted the differences between Proctor's report and Louck Davis's report. He contended that indefinite commitment based solely on an offense that he committed as a minor violated the eighth amendment.

¶ 19   On March 7, 2018, the trial court granted the State's February 8, 2017, motion for a finding of no probable cause. Defendant timely appealed.

¶ 20                    SECOND PROCEEDING ON APPEAL

¶ 21   On October 11, 2017, Louck Davis authored a new reexamination report. It concluded that respondent remained an SVP and had not progressed sufficiently in treatment for conditional release. The specific matters of note here are as follows. In December 2016, respondent passed his sexual-history polygraph examination. In March 2017, his treatment team reviewed his progress and noted that he had improved, decreasing his argumentative behaviors and complying more with treatment directives. At the time of the report, respondent was developing his individualized sexual-offense cycle, and he had not been cited for a behavioral violation in the present review period. In his interview, conducted September 18, 2017, he told Louck Davis that he was now in phase three of the program.

¶ 22   Louck Davis diagnosed respondent with the same mental disorders as she had in the 2016 report. On risk assessment, she repeated the findings of the 2016 report on both the SVR-20 and the STABLE-2007. On the protective factors, she noted that respondent had progressed to the

middle phase of the treatment program and was developing a sexual-offense cycle but had yet to develop a relapse-prevention plan. The report stated, "As such, treatment completion does not yet serve as a protective factor for [respondent]." The other two protective factors, medical condition and age, were inapplicable. Respondent's risk of reoffending was still above average.

¶ 23   The report concluded generally that respondent was still an SVP and had made insufficient progress in treatment to be considered for conditional release. It stated further, "[Respondent] has made progress and is capable of the improvement necessary to achieve conditional release in the future."

¶ 24   On April 4, 2018, respondent moved to appoint an independent evaluator. His motion noted that Louck Davis's 2016 report had departed from Proctor's diagnosis and his methodology. It noted further that respondent had been in custody since he was a juvenile and could not fulfill some criteria for risk reduction, such as developing long-term intimate relationships and finding employment. The motion contended that Louck Davis had not properly factored in his youth and ongoing maturation and brain development. Respondent also opposed the State's motion for a finding of no probable cause, contending again that some of the goals that Louck Davis considered important for progress were unrealistic given that he was in custody. Also, he noted that her report showed that he had made progress in treatment.

¶ 25   On April 13, 2018, the State filed its opposition to the motion for an independent evaluator. The State argued in part that respondent had the burden to show prejudice. It also noted that the original finding that respondent was an SVP was not before the court, as it had been settled long ago. The State contended that Louck Davis had appropriately considered static risk factors and had used several valid assessment tools. Further, respondent's references to immaturity and brain development ignored that he was 27 when he was adjudicated an SVP.

¶ 26    On April 25, 2018, the trial court heard respondent's motion for an independent evaluator. The judge asked respondent whether any changed circumstances since the last hearing made it necessary to appoint an independent evaluator. Respondent replied that his diagnoses had changed and that Louck Davis had disapproved the tests that Proctor had used. The State argued that Proctor's methodology had been accepted at the time and that Louck Davis had used a variety of risk-assessment tools. The judge noted that our opinion in *Bice* had affirmed the denial of an independent evaluator in the proceeding on the 2015 no-probable-cause motion and that Proctor's methodology had already been litigated. The judge concluded that there had been no substantial change in circumstances and therefore denied the motion.

¶ 27    On May 9, 2018, the trial court granted the State's motion for a finding of no probable cause. Respondent timely appealed.

¶ 28                                II. ANALYSIS

¶ 29    We first address respondent's appeal from the judgment of March 7, 2018. He contends that the trial court erred in finding that there was no probable cause to hold an evidentiary hearing on whether he was still an SVP. He relies primarily on the differences between Proctor's report for 2015 and Louck Davis's report for 2016, emphasizing that the latter disagreed with the former's diagnosis of pedophilia and also stated that Proctor erred in relying on actuarial risk-assessment tools. For the following reasons, we find no error.

¶ 30    At a probable-cause hearing, the trial court must determine whether facts exist to warrant a hearing on whether the respondent is no longer an SVP. *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 51. Our review is *de novo*. *Kirst*, 2015 IL App (2d) 140532, ¶ 49.

¶ 31    Respondent's attempt to create probable cause for the 2016 proceeding is not persuasive. Louck Davis's report, the sole evidence before the court, stated unequivocally that respondent was

still an SVP, as he suffered from two qualifying mental disorders and was at an above-average risk of reoffending if his confinement in the DHS were not continued. Her diagnoses were in part inconsistent with Proctor's a year earlier, and she relied on different risk-measurement tools. But her conclusions were still flatly unfavorable to respondent. Respondent strangely uses her critique of Proctor's report to convince us that the trial court should have refused to follow *her* report. We are not convinced.

¶ 32     We turn to respondent's appeal from the judgment of May 9, 2018. Respondent contends first that the finding of no probable cause was erroneous because Louck Davis's risk assessment in her 2017 reexamination report was based heavily on factors over which he has no control as long as he remains in confinement, *e.g.*, the lack of intimate sexual relationships and the lack of an employment history. Respondent asserts that, by denying him a hearing, the trial court continued him in a "vicious circle of indefinite commitment with little, if any, chance for conditional discharge or release." For the following reasons, we disagree.

¶ 33     Respondent is correct that the 2017 report relied in part on matters that he could not change while he was still confined. Of course, even if it had relied entirely on such criteria, that would not prove that its conclusions were open to an evidentiary challenge. But it simply did not trap respondent in a "vicious cycle" of annual recommitment. Although it did consider factors about which respondent could do little, it also considered a crucial factor that was within his control— sexual-offense-specific treatment. The report plainly stated, "[Respondent] has made progress and is capable of the improvement necessary to achieve conditional release in the future." Of course, at the time of the report, respondent was still only about halfway through the treatment program, so it is unsurprising that Louck Davis did not consider this factor sufficient to lower his risk to

where he was no longer an SVP. The trial court read the report and drew the obvious and correct conclusion. We find no merit in respondent's first claim of error.

¶ 34    We turn to respondent's second contention: that the trial court erred in refusing to appoint an independent evaluator. He relies on section 55(a) of the Act, which, as pertinent here, reads, "At the time of a reexamination under this Section, the person who has been committed may retain, or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her." 725 ILCS 207/55(a) (West 2016).

¶ 35    Respondent concedes that whether to appoint an independent evaluator was within the trial court's discretion. See *People v. Botruff*, 212 Ill. 2d 166, 176 (2004). He also recognizes that he had the burden to prove the need for an independent evaluator. *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 33. He notes that under *Botruff* an indigent respondent is entitled to the appointment of an independent evaluator if the evaluator's services are crucial to his case. *Botruff*, 212 Ill. 2d at 177. In contending that he met this prerequisite, respondent emphasizes what he sees as the unique circumstances of his case, primarily that the sole predicate offense for the adjudication as an SVP was one that he committed as a juvenile. Respondent again notes that he cannot control several of the factors that are pertinent to whether the 2017 report and any future report will conclude that he is still an SVP.

¶ 36    We cannot say that the trial court abused its discretion in refusing to appoint an independent evaluator. Respondent did not show a crucial need. Whatever the validity of his criticisms of the original adjudication that he was an SVP (to which he stipulated, in any event), they are irrelevant to whether an independent evaluator was needed in the proceeding on appeal. That proceeding was limited to determining whether, since the prior reexamination report that stated that respondent was an SVP, circumstances had changed so substantially that he was no longer an SVP. See *In re*

*Commitment of Smego*, 2017 IL App (2d) 160335, ¶ 24. The validity of the original adjudication is irrelevant.

¶ 37    Further, insofar as respondent relies on the differences between juveniles and adults, we note that (1) Louck Davis based her evaluation on methodologies that were designed to address the situation of one who did not commit a qualifying offense as an adult; and (2) respondent was an adult when he was adjudicated an SVP. The trial court correctly held that respondent's request for an independent evaluator was supported by nothing more than speculative hope. The court thus did not abuse its discretion in refusing the request.

¶ 38    We turn to respondent's final claim of error in the second judgment: that the court should have held that, as applied to him, the Act imposes cruel and unusual punishment. Respondent relies on *Miller v. Alabama*, 567 U.S. 460 (2012), which bars mandatory life imprisonment without parole for juvenile offenders, and *People v. Reyes*, 2016 IL 119721, which invalidated mandatory minimum sentencing schemes insofar as they result in *de facto* life sentences for juvenile offenders.

¶ 39    Respondent's argument fails. As he concedes, the eighth amendment applies only to a statute that imposes a punishment or penalty. *People v. Patterson*, 2014 IL 115102, ¶ 101. Our supreme court has held that involuntary confinement under the Act is not punishment and that, more generally, proceedings under the Act are civil, not criminal. *In re Detention of Samuelson*, 189 Ill. 2d 548, 558-59 (2000). Respondent's continued commitment is not punishment for his original offense but a civil measure to protect the public from one who presently suffers a mental disorder that makes him likely to pose a future danger to the public. See *id*. at 559 (citing *Kansas v. Hendricks*, 521 U.S. 346, 369-71 (1997)).

¶ 40    Also, respondent's assertion that the Act imposes a "de facto life sentence" on him is inaccurate, not merely because commitment is not a criminal sentence but equally because the Act enables him to be discharged or conditionally released upon the required showing that he is no longer an SVP.  As Louck Davis's recent reports stated, respondent can bring about this result by successfully completing treatment.  It is not a foregone conclusion or even a clear probability that he will be confined for life.

¶ 41    For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 42    Affirmed.