2025 IL App (2d) 250028-U
No. 2-25-0028
Order filed December 23, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF JACKIE HUGHES | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| | ) | |
| | ) | No. 06-MR-1326 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Jackie Hughes, | ) | Ari Fisz, |
| Respondent-Appellant.) | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in finding that there was no probable cause to hold an evidentiary hearing to determine whether respondent remained a sexually violent person.

¶ 2   Respondent, Jackie Hughes, appeals the trial court's order finding that there was no probable cause for an evidentiary hearing to determine whether he continued to be a sexually violent person (SVP) under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 (West 2014)).  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Respondent was first charged with criminal sexual abuse in 1985 for allegedly bathing and taking nude photographs of multiple young girls. He denied the allegations and was acquitted following a bench trial. In 1991, he was charged with aggravated criminal sexual assault for allegedly raping his nine-year-old cousin. He was again acquitted after a bench trial.

¶ 5    In 1995, respondent pleaded guilty to aggravated criminal sexual assault and aggravated criminal sexual abuse for inserting his penis into a ten-year-old girl's vagina three to four times. He was sentenced to one year in jail and three years of probation. His probation was extended in February 1999. The State moved to revoke probation in August 1999 after respondent had unsupervised contact with minors in his home.

¶ 6    Also in 1999, respondent was charged with five counts of criminal sexual assault of a child and five counts of aggravated criminal sexual abuse for sexual contact with six girls under the age of 13. See *People v. Hughes*, 2012 IL 112817, ¶ 3. In December 1999, the State filed a civil commitment petition. In August 2000, respondent was found by a jury to be an SVP and was committed to the care of the Department of Human Services (DHS). However, that finding was reversed on appeal. See *In re Detention of Hughes*, 346 Ill. App. 3d 637, 655 (2004). On remand, the State decided not to seek a new SVP finding and instead chose to proceed with the criminal charges. In September 2006, respondent pleaded guilty to one count of aggravated criminal sexual abuse. In exchange, the State agreed to dismiss the remaining criminal charges, withdraw its petition for civil commitment, and recommend an extended sentence of 14 years in prison.

¶ 7    Two weeks later, in October 2006, the State initiated the current civil commitment proceedings. In September 2014, respondent was found to be an SVP following a bench trial. He was "committed to the custody of the [DHS] for control, care, and treatment in a secure setting

until further Order of Court." This court affirmed. See *In re Commitment of Hughes*, 2017 IL App (2d) 160459-U.

¶ 8    Since his commitment, respondent has been examined every year consistent with section 55 of the Act. 725 ILCS § 207/55 (West 2022). Each time, the trial court has found that there is no probable cause for an evidentiary hearing to determine whether respondent continued to be an SVP. See *In re Commitment of Hughes*, 2020 IL App (2d) 190070-U (affirming finding of no probable cause); *In re Commitment of Hughes*, No. 2-18-0116 (2d Dist. Nov. 7, 2018) (summary order) (same). Most recently, the trial court found that there was no probable cause for an evidentiary hearing on March 1, 2023. The appeal of that order was dismissed for lack of jurisdiction. *In re Commitment of Hughes*, No. 2-24-0088 (2d Dist. Nov. 15, 2024) (minute order).

¶ 9    On July 11, 2023, Dr. Lindsay Dees issued a report from her evaluation of respondent under the Act (2023 Dees Report). As part of her evaluation, she administered three assessments: the Static-99R, the Static-2002R, and the Stable-2007. The Static-99R and Static-2002R "are among the most commonly used actuarial instruments for assessing statistical risk of sexual recidivism," according to Dees. The Stable-2007 looks at dynamic risk factors to assess changes in intermediate-term risk status, treatment needs, and helps predict recidivism in sexual offenders.

¶ 10    According to the 2023 Dees Report, respondent scored a +3 on a scale from -3 to +12, with -3 being lowest risk and +12 being highest risk, on Static-99R. This placed him at an average risk of being charged or convicted with another sexual offense and indicated that "[w]hen compared with the high risk/need group, his score was associated with a 11.3% – 17.2% sexual recidivism risk over five years and a 18.2% – 28.5% sexual recidivism risk over 10 years." Respondent received a score of +3 on a scale of -2 to +13, with -2 being the lowest risk and +13 being the highest risk, on the Static-2002R. This also placed him at average risk and indicated that "[w]hen

compared to the high risk/need group, his score was associated with a 9.8% to 17.7% sexual recidivism rate over five years." On the Stable-2007, respondent scored in the "clinically significant areas of concern" for "Capacity for Relationship Stability," "General Social Rejection," and "Deviant Sexual Interest," which indicate an increased risk to reoffend. Dees noted the only protective factor was respondent's age, 67. According to Dees, studies have shown a significantly decreased risk of sexual recidivism after age 60.

¶ 11    Dees also reviewed respondent's criminal history, DHS file, and prior psychological examination reports. Dees noted that respondent's two acquittals were factually similar to the crimes for which respondent was convicted. She stated that the actuarial assessments may underestimate respondent's true risk given his history. Dees additionally noted that respondent has refused treatment while in the care of DHS. Respondent told Dees that he was lied to and staff documented statements he did not make during previous treatments, so he did not have any interest in treatment with DHS. He also stated that nothing would change his mind because he believed that he had "done enough" through his treatments in the community and while incarcerated. He stated that his current goals were "to prove to these people that I'm not a threat to anybody, to get back home get back to work." Based on her evaluation of respondent, Dees concluded that respondent met the diagnostic criteria for pedophilic disorder, nonexclusive type, sexually attracted to females, that respondent's condition had not significantly changed, and that respondent had not made sufficient progress in treatment, so he should continue to be found an SVP.

¶ 12    The State moved for a finding of no probable cause based on the 2023 Dees Report. See 725 ILCS ¶ 207/65(b)(1). However, the probable cause hearing was delayed to allow respondent time to obtain his own expert report to rebut Dees. Respondent never submitted any expert report during the proceedings at issue in the current appeal.

¶ 13    Dees issued another report following an evaluation of respondent on July 11, 2024 (2024 Dees Report). She administered the same three assessments as the 2023 Dees Report. Respondent received the same scores on the Static-2002R and the Stable-2007. However, respondent received a slightly lower score of +2 on the Static-99R. This still placed him in the same risk category as the 2023 Dees Report. Dees explained that she completed additional training on the Static-99R assessment and learned that respondent's prior disorderly conduct conviction did not meet the requirements for a "prior non-sexual violence" conviction for purposes of the assessment. She clarified that the change in score did not change his risk level from her prior report. Dees again noted that the assessments may not show respondent's true risk due to his acquittals, that he refused to participate in treatment, and that the only protective factor was his age. She again concluded that respondent met the diagnostic criteria for pedophilic disorder, that his condition had not materially changed, and that he had not made sufficient progress in treatment, so he should still be found to be an SVP.

¶ 14    On July 17, 2024, the State filed a motion seeking a finding of no probable cause based on the 2024 Dees Report. Respondent did not file a petition for discharge and did not waive his right to file a petition for discharge. See 725 ILCS § 207/65(b)(1) (West 2022). On November 20, 2024, the trial court conducted a probable cause hearing and found that there was no probable cause for an evidentiary hearing based on Dees' reports. Respondent timely appealed.

¶ 15                                  II. ANALYSIS

¶ 16    After a person has been committed under the Act, DHS must reexamine the person's mental condition at least once every 12 months. 725 ILCS 207/55(a) (West 2022). The purpose of the reexamination is to determine whether: (1) the person has made sufficient progress in treatment to be conditionally released; and (2) the person's condition has so changed since the most recent

periodic examination that he or she is no longer a sexually violent person. *Id.* At the time of the reexamination, the person must be given written notice that they have the right to petition the trial court for discharge. *Id.* § 65(b)(1). If the person does not waive that right, the trial court must conduct a probable cause hearing to determine whether facts exist to warrant a full evidentiary hearing on the issue of whether the person is still an SVP. *Id.*

¶ 17    At the post-commitment probable cause hearing under the Act, the trial court must "determine whether facts exist to believe that since the most recent periodic examination *** the condition of the committed person has so changed that he or she is no longer [an SVP]." 725 ILCS § 207/65(b)(1) (West 2022). The committed person bears the burden of showing a "plausible account" of a change in circumstances that would allow the court to conclude that he no longer meets the elements for commitment: "(1) he *no longer* 'has a mental disorder'; or (2) he is *no longer* 'dangerous to others because the person's mental disorder [*no longer*] creates a substantial probability that he * * * will engage in acts of sexual violence.' "  (Emphasis in original.) *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 68 (quoting 725 ILCS 207/5(f) (West 2008)). If the committed person neither filed a petition for discharge nor waived his right to file a petition for discharge, the probable cause hearing consists only of a review of the reexamination reports and arguments on behalf of the parties. 725 ILCS 207/65(b)(1) (West 2022). The probable cause hearing is " 'intended to be preliminary in nature' " (*Stanbridge*, 2012 IL 112337, ¶ 59) and the committed person's burden is "very low" (*In re Commitment of Wilcoxen*, 2016 IL App (3d) 140359, ¶ 30). If the court finds that probable cause exists, it must set an evidentiary hearing on the issue. 725 ILCS § 207/65(b)(2) (West 2022). We review *de novo* whether probable cause exists to require an evidentiary hearing. *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 49.

¶ 18    On appeal, respondent does not contest that he continues to suffer from a mental disorder. Rather, respondent argues that there is no longer a substantial probability that he will engage in future acts of sexual violence.  Respondent contends that his scores on the actuarial assessments administered by Dees and his advanced age show a low propensity to reoffend.  Thus, respondent argues that he is entitled to an evidentiary hearing to determine whether he is still an SVP.  We disagree.

¶ 19    We first note that, when evaluating respondent's arguments, we must accept any prior judgment that found that respondent was an SVP. *In re Commitment of Tittelbach*, 2018 IL App (2d) 170304, ¶ 31.  We look to Dees' reports not to consider "whether respondent was an SVP or had ever been an SVP, but only as evidence of whether, since the previous reexamination report that stated that *he was an SVP* as of the date of the report, his condition had *changed so substantially* that he was no longer an SVP." (Emphasis in original.) *Id.* (citing *In re Commitment of Smego*, 2017 IL App (2d) 160335, ¶ 24).

¶ 20    With this limitation in mind, we conclude that respondent has not shown any change in circumstances to support a finding of probable cause.  Respondent relies on Dees' reports, but those reports offer nothing to show any change in circumstances. Rather, the reports show that respondent's scores on the assessments have placed him into the same risk categories each year dating back to 2022, the most recent time a finding of no probable cause was made.  While respondent argues that his score on the Static-99R in the 2024 Dees Report decreased by one point from the 2023 Dees Report, this was not because of any apparent change in respondent's circumstances.  Rather, the change was caused by Dees' further training on how to score the assessment.  Even with the change in score, respondent was placed in the same risk level on both reports, so there was no meaningful difference between the two. We also note that respondent has

refused to participate in any treatment as he believes he has "done enough" in treatment before he was found to be an SVP, which places a significant road block in the way of determining a sufficient change in circumstances.

¶ 21    Despite the lack of evidence of any change in circumstances, respondent primarily argues that his results on the actuarial assessments—the Static-99R and the Static-2002R—show that he is not "substantially likely" to reoffend because they put his risk level below 50%. However, those tests, standing alone, "do not calculate an offender's *individual* risk of reoffending" and the totality of circumstances must be taken into consideration. (Emphasis in original.) *In re Commitment of Montanez*, 2020 IL App (2d) 182239, ¶ 22; see *In re Commitment of Vance*, 2017 IL App (3d) 160683, ¶¶ 8, 21 (affirming the trial court's finding of no probable cause because, despite the respondent's low to moderate risk to reoffend based on the actuarial assessments, consideration of additional dynamic factors showed that the respondent had a high risk to reoffend). Indeed, Dees specifically noted that the actuarial assessments may underestimate respondent's true risk based on his history. Given respondent's substantial history, lack of treatment, and, most significantly, the lack of any change in his circumstances, we cannot say that respondent has shown that he is no longer substantially likely to reoffend.

¶ 22    We also reject respondent's argument that his age alone is a sufficient change in circumstances, as we have done before. See *Hughes*, No. 2-18-0116 (2d Dist. Nov. 7, 2018) (summary order) ("the mere fact that respondent aged is not a sufficient showing to establish probable cause that a further hearing is necessary"); see also *Tittelbach*, 2018 IL App (2d) 170304, ¶ 39 ("although respondent was approximately one year older than he had been at the time of the previous report, this was not sufficient to show a change in his condition"); *Smego*, 2017 IL App (2d) 160335, ¶ 29 (rejecting argument that age alone creates probable cause that the respondent

was unlikely to reoffend if released); *In re Detention of Cain*, 402 Ill. App. 3d 390, 397 (2010) (rejecting argument that "given the respondent's age, he was a zero risk to reoffend"). Though we recognize "that there is a linear relationship between increasing age and decreasing risk, and that at some point respondent's age alone might mean that he is no longer a substantial threat to reoffend," respondent has not shown that recent years have been "the proverbial straw that broke the camel's back." *Tittelbach*, 2018 IL App (2d) 170304, ¶ 39. We therefore conclude that respondent has not shown a sufficient change in circumstances to merit an evidentiary hearing.

¶ 23 Respondent relies on *Wilcoxen*, *In re Commitment of Rendon*, and *In re Commitment of Gavin* in support of his argument that he is entitled to an evidentiary hearing. However, each of those cases is distinguishable. The respondent in *Wilcoxen* engaged meaningfully in treatment and showed significant attitudinal changes. *Wilcoxen*, 2016 IL App (3d) 140359, ¶¶ 39, 41. The reviewing court noted that "[t]he treatment [the] respondent had successfully completed addressed mindfulness, maintaining healthy interpersonal relationships, thinking errors, decision-making, and confronting his personal history and his history of offending." *Id.* ¶ 39. "[The] respondent understood how to recognize, correct, and avoid situations that put him at risk to offend, and he understood he had a support network that included his sister and brother-in-law." *Id.* ¶ 39. He also "identified and [took] ownership of his sexual offenses, acknowledged that he had wronged and hurt his victims, and had expressed remorse," and he "believed he could correct his behavior." *Id.* ¶ 41. Thus, the "respondent's commitment to his treatment plan and ownership of his single incident of misconduct demonstrated a clear change in respondent's attitude from the time of his commitment—when he refused to participate in treatment—to the more recent reports that documented respondent's successful completion of numerous treatment programs." *Id.* ¶ 43.

Based on this, the reviewing court determined that the respondent had shown sufficient change in circumstances and was entitled to an evidentiary hearing. *Id.* ¶ 53.

¶ 24 Similarly, the respondent in *Rendon* was in treatment for 18 years, reached stage 5 of a 5-stage treatment plan, and was already on conditional release. 2017 IL App (1st) 153201, ¶ 32. Therefore, the appellate court determined that he was entitled to an evidentiary hearing to determine whether he was still an SVP. *Id.*

¶ 25 In *Gavin*, the appellate court reversed a jury verdict finding that the respondent remained an SVP after an evidentiary hearing because the State did not provide clear and convincing evidence that the respondent was still an SVP. 2024 IL App (1st) 230246, ¶ 71. The court focused on the State's expert, whose testimony "faltered because he often undercut his own assessments." *Id.* ¶ 47. For example, the expert's scores for the respondent on the Static-99R and Static-2000R were based on the respondent's age being 37 or 38, not his actual age of 64. *Id.* ¶¶ 49, 51. The court stated that the expert "held out his analysis as scientifically rigorous but buckled when asked how he reached his conclusions." *Id.* ¶ 66. Thus, the expert's testimony was "arbitrary and not based on the evidence." *Id.* The court concluded that manifest error was created because, through the expert's testimony, "the State offered the jury a conclusion (that [the respondent] was substantially probable to reoffend) based on internally conflicting or, at times, absent rational." *Id.* ¶ 69.

¶ 26 Here, nothing in these three cases supports respondent's arguments. Both *Wilcoxen* and *Rendon* involved respondents that meaningfully participated in treatment and evidenced sufficient improvement based on their treatment, whereas respondent here has refused to participate in treatment. There is otherwise no evidence in the record showing any change in respondent's circumstances. Further, *Gavin* is procedurally distinguishable because the errors there occurred

during the evidentiary hearing, not the probable cause hearing. Respondent does not argue that any similar manifest error that occurred with the expert's opinion in *Gavin* is present with Dees' opinion here.

¶ 27    We therefore conclude that respondent has not shown a plausible account that there was a change in his circumstances to support a finding of probable cause that he may no longer be an SVP and, accordingly, he was not entitled to a full evidentiary hearing under the Act.

¶ 28                                 III. CONCLUSION

¶ 29    For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 30    Affirmed.